[No. 25689-4-II.   Division Two.   July 13, 2001.]

*In the Matter of the Marriage of* DEANNA K. PERKINS, *Respondent*, and JEFFREY D. PERKINS, *Appellant*.

---

[1] "If the trial is by the judge, judgment shall be entered immediately after the close of the trial . . . ."

314

*Larry J. Couture* (of *Tuell & Couture, P.S.*), for appellant.

*Daniel W. Smith* and *Boyd S. Wiley* (of *Campbell Dille & Barnett*), for respondent.

MORGAN, J. — The question in this appeal is whether the trial court violated federal law by awarding the wife "permanent compensatory spousal maintenance" in the amount of 45 percent of the husband's veterans' disability pension. The answer is yes. Accordingly, we reverse in part and remand for further proceedings.

Jeffrey and Deanna Perkins married on February 11, 1978, and separated on February 19, 1999. Jeffrey joined the Air Force shortly before marriage and retired shortly before separation. He served 22 years, 20 of them while married.

When Jeffrey retired from the Air Force, he was eligible to receive a taxable military service pension in the gross amount of $1,446 per month. He also was eligible to receive a nontaxable veterans disability pension equal to 40 percent of his service pension, but only if he waived 40 percent of his service pension.[1] He opted to waive, and his service pension was reduced accordingly. Thereafter, he received a service pension equal to 60 percent of what it would have been absent disability, and a disability pension equal to 40 percent of what his service pension would have been absent disability.

In March 1999, Deanna petitioned for dissolution. In October 1999, a bench trial was held, and in February 2000, the court entered findings of fact and a decree of dissolution. The court found as fact:

> The main asset of the parties is the husband's military retirement, most of which accumulated during the parties['] marriage. 90% of the military retirement is community property. 10% of the retirement is the husband's separate property. The wife's community interest in the military retirement is 45% of

---

[1] See 38 U.S.C. § 5305; *Mansell v. Mansell*, 490 U.S. 581, 583-84, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989).

the *entire* retirement. The husband and wife suffered an automobile accident in 1997 while the husband was in the United States Air Force. The accident was work related. Both the husband and wife suffered substantial injuries from the accident. Due to the accident, the husband has qualified for a 40% VA disability which results in a 40% reduction in the military retirement, a dollar for dollar offset. . . . Prior to qualifying for the disability, the husband's monthly military retirement was as follows:

| | |
|---|---|
| $1,446.00 | gross pay |
| - $94.23 | survivor benefit plan |
| | |
| $1,351.77 | taxable income |

After the husband's 40% disability, the military retirement pay is as follows:

| | |
|---|---|
| $1,446.00 | gross pay |
| - $94.23 | survivor benefit plan |
| - $482.00 | disability reduction |
| | |
| $869.77 | taxable income |

*The wife should receive 45% of the disability portion (45% times $482 equals $216.90). Husband should pay to wife compensatory spousal maintenance in an amount which represents 45% of husband's total monthly compensation for disability. This is in addition to the 45% of the reduced military retirement that she is awarded.* The maintenance payments shall survive petitioner's remarriage. If the husband is not able to deduct this compensatory spousal maintenance payment as income on his Federal Income Tax Return, then husband may reduce his compensatory spousal maintenance payment to the wife by 20% to compensate him for the Federal Income Tax he is required to pay.

*The wife is losing $216 per month in military retirement due to the change to 40% of the retirement to disability. The wife should receive this difference as compensatory spousal maintenance* pursuant to the analysis in the Supreme Court case, *In*

*re the Marriage of Jennings,* 138 Wn.2d[] 612[, 980 P.2d 1248] (1999).[2]

The court ruled in its decree that the wife

*is hereby entitled to 45% of the ... husband's ... military retirement. ... If the husband's military retirement [pension] ... is ... changed in form to a disability payment, the wife shall be entitled to her 45% share.*[3]

The court ordered in its decree that the husband

*pay to ... wife ... permanent compensatory spousal mainte-nance in an amount which represents 45% of [husband's] total monthly compensation for disability and retirement; provided that [wife's] maintenance amount shall be reduced by military retirement actually received by [the wife][.]*[4]

Jeffrey now appeals. He claims that the trial court violated federal law by dividing and distributing his veter-ans' disability pension. We agree.

■■■ We begin with three state law propositions. (1) When disability benefits replace future compensation (e.g., postdissolution wages), they are not distributable at a dissolution trial. Future compensation is not distributable because it is not on hand at trial, so when disability benefits replace such compensation, they are treated in the same fashion.[5] (2) When disability benefits replace compensation earned but deferred during marriage (e.g., retirement ben-efits), they are distributable at a dissolution trial. As we stated in *Marriage of Geigle,* "If ... a party would be receiving retirement benefits but for a disability, so that disability benefits are effectively supplanting retirement benefits, the disability payments are a divisible asset to the

---

[2] Clerk's Papers (CP) at 42-43 (emphasis added).

[3] *Id.* at 49 (emphasis added).

[4] *Id.*

[5] *In re Marriage of Brewer,* 137 Wn.2d 756, 767-69, 976 P.2d 102 (1999); *In re Marriage of Geigle,* 83 Wn. App. 23, 30, 920 P.2d 251 (1996); *In re Marriage of Nuss,* 65 Wn. App. 334, 343, 828 P.2d 627 (1992); *In re Marriage of Anglin,* 52 Wn. App. 317, 324, 759 P.2d 1224 (1988); 20 KENNETH W. WEBER, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW § 32.17, at 190-91 (1997).

extent they are replacing retirement benefits."[6] (3) Even when disability benefits are not distributable at a dissolution trial, they remain a future economic circumstance that the trial court should consider when distributing the parties' property.[7]

■ Federal law preempts the second proposition with respect to a veterans' disability pension. Federal law prohibits a state dissolution court from dividing such a pension, and from distributing *by any means* any part of such pension, according to *Hisquierdo v. Hisquierdo*,[8] *McCarty v. McCarty*,[9] the Uniformed Services Former Spouses' Protection Act (USFSPA),[10] and *Mansell v. Mansell*.[11]

*Hisquierdo* was decided in 1979. The question was whether the federal Railroad Retirement Act of 1974 prohibited a state dissolution court from dividing the husband's railroad service pension. The Act provided that the payment of retirement benefits was not to "be anticipated,"[12] and that retirement benefits would be paid to the eligible "individual."[13] The husband asserted that these provisions barred the division of his future pension. The wife asserted that his future pension was divisible as community property under California law; that federal law did not preempt California law; and that the California dissolution court should either (a) "order [the husband] to pay her an appropriate portion of his benefit . . . as [he]

---

[6] *In re Marriage of Geigle*, 83 Wn. App. 23, 31, 920 P.2d 251 (1996) (citing *In re Marriage of Kollmer*, 73 Wn. App. 373, 377, 870 P.2d 978, *review denied*, 124 Wn.2d 1022 (1994); *Nuss*, 65 Wn. App. at 343; *In re Marriage of Leland*, 69 Wn. App. 57, 73, 847 P.2d 518, *review denied*, 121 Wn.2d 1033 (1993)); 20 WEBER, *supra*, § 32.17, at 191.

[7] RCW 26.09.080(4), .090(1)(a); *In re Marriage of Kraft*, 119 Wn.2d 438, 446, 448, 451, 832 P.2d 871 (1992).

[8] *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979).

[9] *McCarty v. McCarty*, 453 U.S. 210, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981).

[10] 10 U.S.C. § 1408(c)(1).

[11] *Mansell v. Mansell*, 490 U.S. 581, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989).

[12] 45 U.S.C. § 231m; *see also Hisquierdo*, 439 U.S. at 576.

[13] 45 U.S.C. § 231a; *Hisquierdo*, 439 U.S. at 574.

receives it"[14] or (b) value the pension and "award her a compensating amount of other property."[15] The United States Supreme Court held that the Railroad Retirement Act preempted California's community property scheme, and that federal law prohibited a state dissolution court from giving the wife any part of the husband's railroad pension *either* (a) by ordering the husband to pay the wife a portion of each monthly payment as he received it *or* (b) by valuing the pension and granting the wife "an offsetting award" of other assets. In the Court's words, "[a]n offsetting award . . . would upset the statutory balance . . . just as surely as would a regular deduction from his benefit check."[16]

*McCarty* was decided in 1981. The question presented was "whether, upon the dissolution of a marriage, federal law precludes a state court from dividing military nondisability retired pay pursuant to state community property laws."[17] The relevant federal statute provided in part that a "member of the Army retired under this chapter is entitled to retired pay."[18] The husband, an Army doctor who had served 18 of the 20 years needed to retire, requested in his California complaint for divorce "that all listed assets, including '[a]ll military retirement benefits,' be confirmed to him as his separate property."[19] The wife asked that his retirement benefits be treated as community property and divided. The California trial court ordered the husband to pay the wife half the benefits accrued during marriage, or about 45 percent of his total nondisability retirement benefits. The United States Supreme Court reversed. Relying in part on *Hisquierdo*, it ruled that "Congress ha[d] neither authorized nor required the com-

---

[14] *Hisquierdo*, 439 U.S. at 583.

[15] *Hisquierdo*, 439 U.S. at 579.

[16] *Hisquierdo*, 439 U.S. at 588.

[17] *McCarty*, 453 U.S. at 211.

[18] 10 U.S.C. § 3929; *McCarty*, 453 U.S. at 224.

[19] *McCarty*, 453 U.S. at 217 (alteration in original).

munity property division of military retired pay,"[20] and that a state dissolution court was precluded from dividing or distributing such pay, even "by the simple expedient of an offsetting award."[21]

The USFSPA was enacted in 1982.[22] It defines "disposable retired pay" as "the total monthly retired pay to which a member is entitled less amounts which . . . are deducted from the retired pay of such member . . . as a result of a waiver of retired pay required by law in order to receive" veterans' disability compensation.[23] It provides, as later amended, that "a court may treat disposable retired pay . . . either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court."[24] Thus it reverses, subject to limitations not pertinent here, *McCarty*'s holding on *nondisability* retired pay.[25]

*Mansell* was decided in 1989. The question was "whether state courts, consistent with [USFSPA], may treat as property divisible upon divorce military retirement pay waived by the retiree in order to receive veterans' disability benefits."[26] Noting that Congress had "authorize[d] state courts to treat 'disposable retired . . . pay' as community property," but that Congress had defined "[d]isposable retired . . . pay" so as *not* to include "amounts waived in order to receive disability benefits,"[27] the United States Supreme Court held that the USFSPA grants a state dissolution court "the authority to treat *disposable* retired pay as community property," but not "the authority to treat

---

[20] *McCarty*, 453 U.S. at 232.

[21] *McCarty*, 453 U.S. at 230 n.22.

[22] Pub. L. No. 97-252, 96 Stat. 730 (1982).

[23] 10 U.S.C. § 1408(a)(4); *see Mansell*, 490 U.S. at 584-85.

[24] 10 U.S.C. § 1408(c)(1).

[25] 10 U.S.C. § 1408(c)(1); *Mansell*, 490 U.S. at 589.

[26] *Mansell*, 490 U.S. at 583.

[27] *Mansell*, 490 U.S. at 584-85.

*total* retired pay as community property."[28] Hence, the Court said, the USFSPA "does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits."[29]

■ Although federal law preempts the second of our state-law propositions, it does not preempt the third. In *In re Marriage of Kraft*, a 1992 case, the Washington Supreme Court sought to harmonize *Mansell*'s requirement "not to treat military disability retirement pay as divisible" with RCW 26.09.080's requirement "to make an equitable distribution in light of the parties' postdissolution economic circumstances."[30] It stated:

> [W]hen making property distributions or awarding spousal support in a dissolution proceeding, the court may regard military disability retirement pay as future income to the retiree spouse and, so regarded, consider it as an economic circumstance of the parties. In particular, the court may consider the pay as a basis for awarding the nonretiree spouse a proportionately larger share of the community property where equity so requires. *The court may not, however, divide or distribute the military disability retirement pay as an asset.* It is improper under *Mansell* for the trial court to reduce military disability pay to present value where the purpose of ascertaining present value is to serve as a basis to award the nonretiree spouse a proportionately greater share of the community property as a direct offset of assets.[31]

And the court reiterated later in its opinion:

> [T]he trial court in a marriage dissolution action may consider military disability retirement pay as a source of income in awarding spousal or child support, or generally as an economic

---

[28] *Mansell*, 490 U.S. at 589 (emphasis added).

[29] *Mansell*, 490 U.S. at 594-95.

[30] *In re Marriage of Kraft*, 119 Wn.2d 438, 444, 832 P.2d 871 (1992).

[31] *Kraft*, 119 Wn.2d at 447-48 (emphasis added); *see also* 20 WEBER, *supra*, at 196; *cf. In re Marriage of Roark*, 34 Wn. App. 252, 255, 659 P.2d 1133 (1983) (though not divisible under federal law, railroad pension may be considered as one future economic circumstance).

circumstance of the parties justifying a disproportionate award of community property to the nonretiree spouse. *The trial court may not, however, divide and distribute the disability pay or value it and offset other property against that value.* In the present case, the trial court reduced the military disability pay to present value and then offset assets against it by awarding to Mrs. Kraft a proportionately larger share of the community property. This is not a permissible way of considering military disability retirement pay under the *Mansell* holding.[32]

In short, according to *Kraft*, a Washington dissolution court may not divide or distribute a veterans' disability pension, but it may consider a spouse's entitlement to an *undivided* veterans' disability pension as one factor relevant to a just and equitable distribution of property[33] under RCW

---

[32] *Kraft*, 119 Wn.2d at 451 (emphasis added). *See also Clauson v. Clauson*, 831 P.2d 1257, 1264 (Alaska 1992) ("We . . . hold that federal law does not preclude our courts from considering, when equitably allocating property upon divorce, the economic consequences of a decision to waive military retirement pay in order to receive disability pay."); *McMahan v. McMahan*, 567 So. 2d 976, 980 (Fla. Dist. Ct. App. 1990) (notwithstanding *Mansell*, state courts may consider the impact of veterans' disability payments in determining the "entire equitable distribution scheme . . . in an effort to do equity and justice to both [parties]"); *Jones v. Jones*, 7 Haw. App. 496, 780 P.2d 581, 584 ("Neither Hawaii's rule nor federal law precludes the family court, when dividing property and debts in a divorce case, from considering as one of the relevant circumstances . . . a party's time-of-divorce right to receive veterans' and military disability pay post-divorce in the same way that the family court considers each party's ability or lack of ability to earn and receive income post-divorce."), *cert. denied*, 833 P.2d 900 (Haw. 1989); *Bewley v. Bewley*, 116 Idaho 845, 780 P.2d 596, 598 (Ct. App. 1989) ("We do not interpret *Hisquierdo* to bar unequal awards of community property in *all* cases where nondivisible federal benefits are involved. But any inequality must be based upon bona fide considerations other than dissatisfaction with the federal scheme."); *Strong v. Strong*, 2000 MT 178, 300 Mont. 331, 8 P.3d 763, 769 (A court "may consider VA disability benefits in the same way it considers each party's ability to earn income post-dissolution as an import factor in achieving an equitable property division."); *Weberg v. Weberg*, 158 Wis. 2d 540, 463 N.W.2d 382, 384 (Ct. App. 1990) (trial court may consider veterans' disability payments as a factor in assessing ex-husband's ability to pay spousal maintenance); *but see Billeck v. Billeck*, 777 So. 2d 105, 109 (Ala. 2000) ("When a trial court makes an alimony award based upon its consideration of the amount of veteran's disability benefits, the trial court essentially is awarding the wife a portion of those veteran's disability benefits; and in doing so . . . violate[s] federal law.").

[33] *See also Edwards v. Edwards*, 74 Wn.2d 286, 287, 444 P.2d 703 (1968); *Roach v. Roach*, 72 Wn.2d 144, 147, 432 P.2d 579 (1967); *DeRevere v. DeRevere*, 5 Wn. App. 741, 746-47, 491 P.2d 249 (1971).

26.09.080,[34] and as one factor relevant to an award of maintenance under RCW 26.09.090,[35] provided of course that it follows the usual state-law rules for applying those statutes.[36]

▮ In light of these authorities, the key question here is whether the trial court divided Jeffrey's veterans' disability pension and distributed part of it to Deanna; or, alternatively, whether the trial court merely considered the *undivided* disability pension as one factor tending to show Jeffrey's postdissolution ability to pay maintenance. The trial court stated in its findings that "[t]he wife's community interest in the military retirement is 45% of the *entire* retirement"; that "[t]he wife should receive 45% of the disability portion (45% times $482 equals $216.90)"; and that the husband should pay the wife "45% of husband's total monthly compensation for disability . . . in addition to the 45% of the reduced military retirement that she is awarded."[37] The trial court stated in its decree that the wife is "entitled to 45% of the . . . husband's . . . military retirement" even "[i]f the husband's military retirement [pension] . . . is . . . changed in form to a disability payment"; and that the husband shall pay to the wife "45% of [his] total monthly compensation for disability and retirement," less any amounts received by the wife from federal

[34] RCW 26.09.080 provides that a dissolution court "shall, without regard to marital misconduct, make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors including, but not limited to . . . [t]he economic circumstances of each spouse at the time the division of property is to become effective."

[35] RCW 26.09.090 provides that a dissolution court "may grant a maintenance order for either spouse. The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, after considering all relevant factors including but not limited to . . . [the] ability of the spouse from whom maintenance is sought to meet his [or her] needs and financial obligations . . . ."

[36] The court must, for example, consider all relevant factors, RCW 26.09.090(1); *In re Marriage of Williams*, 84 Wn. App. 263, 267-68, 927 P.2d 679 (1996), *review denied*, 131 Wn.2d 1025 (1997); *In re Marriage of Terry*, 79 Wn. App. 866, 869, 905 P.2d 935 (1995), and enter findings of fact. *In re Marriage of Crosetto*, 82 Wn. App. 545, 558, 918 P.2d 954 (1996).

[37] CP at 42.

pension authorities.[38] This was precisely the kind of dollar-for-dollar division and distribution that *Mansell* and *Kraft* prohibit,[39] and it violated federal law.

Deanna argues that the trial court purified this otherwise improper division and distribution by calling it "maintenance." *Mansell* flatly prohibits a state dissolution court from dividing, and then distributing any part of, a veterans' disability pension.[40] It makes no difference whether the division and distribution are implemented by awarding part of the future income stream that is the pension itself;[41] by finding present value and making an offsetting award of other assets;[42] or by awarding "maintenance."[43] We hold that *Mansell* cannot be circumvented simply by chanting "maintenance."

Attempting to bolster her argument, Deanna relies on *In re Marriage of Jennings*.[44] The couple in that case divorced in 1992. The husband had a veterans' disability pension of $318 per month, obtained by waiving an equivalent amount of his military service pension. The husband also had a military service pension of at least $1,627 per month.[45] Following *Mansell*, the trial court awarded the husband the entire disability pension. Following the USFSPA, the trial court divided and distributed the *service* pension half to each spouse, stating that the wife was "entitled to Eight

[38] *Id.* at 49.

[39] *Mansell*, 490 U.S. at 589; *see also Hisquierdo*, 439 U.S. at 579; *McCarty*, 453 U.S. at 230 n.22; *Kraft*, 119 Wn.2d at 447-48.

[40] *Mansell*, 490 U.S. at 589.

[41] *See Mansell*, 490 U.S. at 589.

[42] *Hisquierdo*, 439 U.S. at 588; *McCarty*, 453 U.S. at 230 n.22; *Kraft*, 119 Wn.2d at 447-48, 451.

[43] *Hoskins v. Skojec*, 696 N.Y.S.2d 303, 305, 265 A.D.2d 706 (1999) ("[A] court in an action for divorce or separation cannot order as spousal maintenance the allocation of compensation received . . . from . . . veterans' disability benefits . . . .").

[44] *In re Marriage of Jennings*, 138 Wn.2d 612, 980 P.2d 1248 (1999).

[45] The decree contained mathematical inconsistencies. We ignore them, yet still state the facts material to this case, by describing the service pension as "at least" $1,627 per month.

Hundred Thirteen dollars ($813) per month"[46] and that the Army Finance Center should pay that amount directly to her. Being obviously compliant with federal law, these awards were not appealed.

Probably in 1995,[47] the husband accepted a significant increase in his veterans' disability pension and waived a corresponding amount of his military service pension.[48] As a result, the Army Finance Center reduced the wife's monthly payments from $813 to $136 per month.

In October 1995, the wife moved to vacate, modify, or clarify the 1992 decree. In June 1996, after finding "extraordinary circumstances" under CR 60(b)(11),[49] the trial court vacated the decree's declaration that the Army Finance Center should pay the wife $813 per month, providing instead that the Army Finance Center should pay the wife $136 per month and the husband should pay the wife the remainder of the $813 per month originally awarded.[50]

On appeal, the husband contended that the trial court had violated *state* law by reopening and altering a res judicata decree. The wife responded alternatively: (a) the trial court could clarify without reopening because the decree was ambiguous; or (b) the trial court was authorized to reopen under CR 60(b)(11). As far as the opinion shows, no one contended that the trial court had violated *federal* law when it entered its 1992 decree, or when it entered its 1996 order revising the 1992 decree.[51]

---

[46] *Jennings*, 138 Wn.2d at 614.

[47] This date does not appear in the opinions. We infer it from the fact that the wife moved to vacate, modify, or clarify in October 1995.

[48] *See* 10 U.S.C. § 1408(a)(4)(B); 38 U.S.C. §§ 1110, 1131.

[49] CR 60(b)(11) provides:

The motion shall be made within a reasonable time and for reasons (1), (2) or (3) not more than 1 year after the judgment, order, or proceeding was entered or taken. . . . A motion under this section (b) does not affect the finality of the judgment or suspend its operation.

[50] The new order actually gave the wife $746 rather than $813. The difference is immaterial here, so we use $813 in an effort to simplify our description.

[51] No one contended that the trial court had violated federal law when it entered

The Washington Supreme Court affirmed the trial court. It held that the 1992 decree was ambiguous on "whether [the wife] was in fact awarded one-half of [the husband's] gross military retirement benefits or whether she was granted absolutely a judgment against [the husband] for $813.50 per month which the court chose to have paid to her direct from [the] husband's monthly military retirement benefits."[52] It held "that there were extraordinary circumstances . . . which justified remedial action by the trial court to overcome a manifest injustice which was not contemplated by the parties at the time of the 1992 decree."[53] It "conclude[d] the trial court did not abuse its discretion in clarifying the original decree of dissolution under RCW 26.09.170[54] and the trial court could reasonably conclude the drastic change in the status and amount of the monthly military retirement payments to [the husband] constituted an 'extraordinary circumstance' under CR 60(b)(11)."[55]

As can be seen, the question discussed in *Jennings* is different from the question presented here. The question discussed in *Jennings* was whether *state* law afforded the wife a remedy when, years after the original decree, the husband waived most of the service pension that the trial court had properly divided and distributed in its original decree. The question presented here is whether the trial court violated *federal* law when it entered its *original* decree. The question presented here was not discussed in

---

its 1992 decree, for it obviously had not; it had divided the military service pension as permitted by the USFSPA, and it had awarded the entire disability pension to the husband as required by *Mansell*. Nor did anyone contend that the trial court had violated *federal* law when, in 1996, it entered an order restoring to the wife the $813-per-month stream of income that had been her *separate* property since 1992.

[52] *Jennings*, 138 Wn.2d at 625.

[53] *Jennings*, 138 Wn.2d at 625.

[54] RCW 26.09.170 provides with reference to a final decree, "The provisions as to property disposition may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state."

[55] *Jennings*, 138 Wn.2d at 625-26.

*Jennings* because the *Jennings* trial court had fully complied with federal law at the time it entered its original decree.[56] We conclude that Deanna's reliance on *Jennings* is misplaced.[57]

Nothing said herein means that on remand the trial court may not award maintenance after considering the existence of an *undivided* disability pension as one factor (among many) bearing on the husband's ability to pay, and after entering proper findings of fact under RCW 26.09.090.[58] As the *Kraft* court pointed out, a trial court may award maintenance after considering all relevant factors, of which a military disability pension may be one. All we hold here is that a trial court may not divide a veterans' disability pension and award part of it to the nondisabled spouse, even if the court labels its award as "maintenance."

Because the trial court divided and distributed the veterans' disability pension in violation of federal law, we reverse and vacate the property, debt, and maintenance parts of the dissolution decree. We affirm the balance of the decree. We remand for redistribution of property and debts, and for reconsideration of maintenance. On remand, the trial court may redistribute and reconsider based on the record already made, or it may in its discretion take more evidence. On remand,

---

[56] The *Jennings* trial court awarded the undivided disability pension to the veteran spouse as required by *Mansell*'s reading of the USFSPA. The *Jennings* trial court divided and distributed the service pension to both spouses as expressly permitted by the USFSPA.

[57] Incidentally, *Jennings* is distinguishable from this case even if one considers the federal-law question that *could have been* presented in *Jennings*. The federal-law question in *Jennings* was whether the USFSPA allows a state dissolution court to restore, by an award of maintenance or otherwise, *service* benefits that were *properly* divided and distributed in an original decree; that were thereafter the recipient spouse's *separate* property, *see Farver v. Dep't of Ret. Sys.*, 97 Wn.2d 344, 348, 644 P.2d 1149 (1982); *In re Marriage of Moore*, 99 Wn. App. 144, 147, 993 P.2d 271 (1999); and that were later stripped from the recipient spouse by a waiver executed without her consent. The federal-law question in this case is whether the USFSPA allows a state dissolution court to divide and distribute *disability* benefits by awarding maintenance in its *original* decree. These questions are not the same, and thus *Jennings* is of no help here.

[58] *Williams*, 84 Wn. App. at 267-68; *Crosetto*, 82 Wn. App. at 558.

the trial court may, if in its view equity so requires, distribute the [parties'] property in the same manner in which it did initially. What is required is that [it] arrive at its decision as to what is just and equitable under all the circumstances after considering the military disability retirement pay in the manner we here explain.[59]

Reversed in part, affirmed in part, and remanded for further proceedings.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HUNT, A.C.J., and SEINFELD, J., concur.