IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of | No. 86073-9-I |
| JANICE A. HODGE, | DIVISION ONE |
| Appellant, | |
| and | UNPUBLISHED OPINION |
| MICHAEL R. HODGE, | |
| Respondent. | |

SMITH, J. — This is the second appeal in this matter. Janice Hodge and Michael Hodge separated after 38 years of marriage. Following a dissolution trial, the court entered findings of fact and a decree distributing the parties' assets and Janice appealed. This court remanded for the trial court to (1) correct the lien against the community reimbursing Michael for his separate contribution to maintain the family home pending dissolution; (2) redistribute Michael's California Public Employees' Retirement System pension; (3) reconsider the award of Michael's survivor benefit; and (4) recalculate maintenance. On remand, the court entered orders amending its decree and supplementing its findings. Janice again appeals. Finding the court did not abuse its discretion, we affirm but award Janice costs and fees.

FACTS

Janice and Michael Hodge[1] married in California in May 1981.[2] During the marriage, Janice worked in the insurance industry and Michael worked in risk management for several California cities. Prior to his work in risk management, Michael served in the United States Marine Corps, where he sustained injuries resulting in a permanent disability.

In 2001, the parties purchased a house in North Bend, Washington, where they intended to retire. In 2003, Michael retired and in 2004, the parties, along with their two children, moved into the North Bend home. When Michael retired, he received a pension under the California Public Employees' Retirement System (CalPERS). Michael elected to receive a lower monthly payment in exchange for a 100 percent survivor benefit. He named Janice the sole beneficiary of the survivor benefit so she would receive Michael's full monthly pension after his death. Michael also collected Social Security benefits and a monthly disability benefit from the United States Department of Veterans Affairs (VA).

The parties made extensive modifications to the North Bend property with funds from the sale of their California home, a construction loan, and a $50,000 grant from the VA. Sometime in 2007, Janice's mother and sister moved into an

---

[1] We refer to the parties by their first names solely for the purpose of clarity and to avoid confusion.

[2] The facts concerning the Hodges' initial trial and appeal come from this court's unpublished opinion in *In re Marriage of Hodge*, No. 82557-7-I (Wash. Ct. App. Jan. 3, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/825577.pdf.

accessory dwelling unit (ADU) on the property. Janice's mother passed away a few years later, but Terry, Janice's sister, was still living in the ADU at the time of dissolution.

Janice and Michael separated in August 2019, and Janice petitioned for dissolution in October 2019. In January 2020, Janice sought temporary dissolution orders. A commissioner entered a temporary financial order that allowed Janice to stay in the marital home and ordered Michael to pay the mortgage and home equity line of credit (HELOC) to "preserve the community asset." The court also ordered Michael to pay Janice monthly maintenance of $2,000. During this time, Michael resided in a fifth wheel trailer owned by the parties.

The court held a three-day trial in January 2021. At trial, the parties disputed the allocation of Michael's CalPERS survivor benefit. Janice wanted to be removed as the beneficiary and have Michael receive the entire pension. If Janice were to be removed as the beneficiary, she would receive a lump-sum payout for her community share and Michael would receive an estimated increase in his monthly pension payments of between $400 to $1,500.

The court did not remove Janice as the beneficiary. Instead, in its findings and conclusions, it designated the $434,333 survivor benefit as community property and awarded it to Janice. The court valued the parties' North Bend home at $1.4 million, subject to a $59,818 mortgage and a $206,881 HELOC. The court recognized that under the temporary order, Michael paid the parties' full mortgage and HELOC obligations during separation from his separate VA

3

and Social Security benefits: $85,068 on the mortgage and $21,114 on the HELOC, for a total of $106,182. The court valued Michael's CalPERS pension at $1,044,365 and designated $644,838 as community property. It found Michael received a monthly income of $6,757 from that pension. Finally, the court ordered Michael to pay $1,750 per month in maintenance for the rest of Janice's life, secured by a life insurance policy.

Before a final decree was entered, Michael requested a hearing to clarify the court's findings concerning the CalPERS survivor benefit. Michael argued that after his death, Janice would receive the survivor benefit providing monthly income until her death, rendering life insurance to secure maintenance unnecessary. Janice objected, arguing the court had not yet awarded the pension or survivor benefit. She again requested the court award Michael 100 percent of the CalPERS pension so she could be removed as beneficiary of the survivor benefit.

In its final dissolution order, the court awarded Janice the survivor benefit, but relieved Michael of the obligation to purchase life insurance. The court noted that when Michael dies, in place of maintenance, Janice will receive payments from the survivor benefit. The court also awarded Janice half of the community portion of Michael's CalPERS pension ($345,206), to be distributed in monthly increments of $1,750. Janice received the North Bend home and was ordered to pay Michael a money judgment of $566,651. But later in the order, the court stated Janice "must pay [Michael] the amount of $886,709."

4

Both parties moved for reconsideration. Janice expressed concern that the court ordered her to pay two money judgements to Michael—$566,651 and $886,709—resulting in an unfair division of community property. Michael claimed the lesser judgment would be inadequate and $866,709 was the appropriate amount.

The court issued an amended final dissolution decree and attached an asset spreadsheet. The court clarified Janice was to pay Michael a total money judgment of $875,195.80. The asset spreadsheet showed a $106,182 lien against the community in favor of Michael for his pre-dissolution payments of $85,068 for the mortgage and $21,114 for the HELOC to maintain the family home. The court awarded Janice maintenance in the amount of $1,750, explaining the amount was fair "in consideration of all the factors," including Janice's needs, the other gainfully employed adults (the parties' two children and Janice's sister, Terry) residing in her home, Michael's ability to pay, and the parties' standard of living during the marriage.

Michael moved to clarify the court's amended final dissolution decree, asking whether the court intended to award Janice both $1,750 from the CalPERS pension and $1,750 in maintenance for a total monthly payment of $3,500, or just one monthly payment of $1,750. The court clarified that Michael "'pay a total of $1,750 to [Janice] from the C[al]PERS pension as and for spousal maintenance," eliminating the payment to Janice for her community portion of the pension.

5

Janice appealed to this court, claiming the trial court abused its discretion by crediting Michael for his pre-dissolution mortgage and HELOC payments, awarding her a portion of Michael's CalPERS pension as an asset but then ordering it disbursed to her monthly as maintenance, and overvaluing and assigning Michael's CalPERS survivor benefit to her as an asset. Janice also asserted the court erred in its calculation of maintenance by relying on the income of other persons residing in the home who did not contribute to the household expenses.

This court agreed with Janice. First, we noted that by creating a lien in favor of Michael for the entire amount he contributed during separation, the court shifted the entire burden of maintaining the community asset from Michael to Janice. Next, we concluded that by awarding Janice her share of the CalPERS pension as an asset but then ordering her maintenance to come from that asset, the court distributed the asset in a manner inconsistent with the law. Because the allocation of the pension was remanded for consideration, the distribution of the survivor benefit needed to be reconsidered as well. Finally, we noted the award of maintenance needed to be recalculated without considering the income of other adults in the home. We reversed and remanded to the trial court with these instructions.

On remand, the trial court held an evidentiary hearing. At the hearing, Janice again requested the court award the entire CalPERS pension to Michael and award her a lump-sum payment. In its order, the court awarded Janice the CalPERS survivor benefit as a community asset. The court noted that awarding

6

Michael the entire pension would have "negative (and unfair) tax ramifications" and would only result in a marginal increase in Michael's monthly pension. The court also considered the decrease in monthly payments Michael had received the past two decades in anticipation of Janice receiving the survivor benefit.

The court also revised the distribution of Michael's CalPERS pension so Janice received half her community interest in addition to $1,500 in spousal support from Michael. The court noted this maintenance was calculated with no regard to the income of other adults in Janice's household. Finally, the court ordered Janice to pay Michael $221,172.19—the remaining balance, including interest, due on the original money judgment of $848,650. Janice again appeals.

ANALYSIS

Janice claims the trial court abused its discretion in determining property distribution, equalizing income, and awarding maintenance. Michael contends the court did not abuse its discretion on any of these matters. Both parties request fees and costs on appeal.

Property Distribution

Janice claims the trial court miscalculated the money judgment owed to Michael and erred in awarding her the CalPERS survivor benefit. Michael contends the court's decision was within its discretion and was not unjust or unreasonable. Because the trial court did not err in calculating the money judgment and its distribution of the CalPERS survivor benefit was in accordance with law, we agree with Michael.

Under RCW 26.09.080, the trial court shall make a just and equitable distribution of property. It must consider all relevant factors, including the nature and extent of the community property, the nature and extent of the separate property, the duration of the marriage, and the economic circumstances of the parties at the time of the property division. RCW 26.09.080.

The trial court is in the best position to evaluate the assets and liabilities of parties, and we will not disturb a trial court's order distributing property absent an abuse of discretion. *In re Marriage of Wallace*, 111 Wn. App. 697, 707, 45 P.3d 1131 (2002). "A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or for untenable reasons." *Wallace*, 111 Wn. App. at 707. A court that rests its decision on facts unsupported in the record or reaches its decision by applying the wrong legal standard abuses its discretion. *Hundtofte v. Encarnacion*, 181 Wn.2d 1, 7, 330 P.3d 168 (2014).

1. Money Judgment

Janice claims the record contains no factual basis for the trial court's money judgment order. Michael contends Janice waived this argument, and even if the argument was not waived, the judgment was not erroneous. Because Janice proposed the money judgment and substantial evidence supports the amount of judgment, we agree with Michael.

If a party fails to raise a claim in the trial court, the court of appeals may refuse to review the claim. RAP 2.5. Additionally, under the invited error doctrine, a party cannot take " 'affirmative and voluntary action' that induces the

8

trial court to take an action later challenged on appeal." *Shavlik v. Dawson Place*, 11 Wn. App. 2d 250, 270, 452 P.3d 1241 (2019) (quoting *Grange Ins. Assoc. v. Roberts*, 179 Wn. App. 739, 320 P.3d 77 (2013)).

Here, Janice did not waive the claim because she could not have raised the issue at trial, as the judgment had not yet been entered, but she did invite the error she now challenges on appeal. Prior to the trial court issuing its second amended final divorce order, Janice prepared a memorandum directing the court's attention to "an incorrect principal judgment." In her memorandum, Janice calculated the "final current payoff figure," including interest to be $221,172.19. When the court issued its order, it set the judgment amount at $221,172.19, adopting Janice's calculation of judgment in her memorandum, including principal and interest. Janice cannot claim error on appeal for a judgment she proposed.

Even if Janice had not proposed the judgment, the trial court provided substantial evidence to support the amount. The court noted $170,067.94 of the judgment was principal and $51,104.25 was interest accrued during the period May 14, 2021 through November 14, 2023. Janice claims the court does not clarify whether the money judgment is intended to be part of the original $848,650 judgment or a new judgment. She also claims if it is the remainder due on the original judgment, it is incorrectly calculated.

Janice states she has already paid $689,516 of the amount owed, and subtracting that amount from the total lien ($848,650) leaves only $159,516. But, this calculation does not include the interest that accrued between the time the

judgment was entered and when the funds were dispersed to Michael. As Janice correctly noted in her memorandum, "[a] total of 38 days passed between April 6, 2021 (the date of judgment) and May 14, 2021 (the approximate date of the disbursement). Interest is determined as follows: $875,195.00 x 0.12 ÷ 365 x 38 days = $10,933.94 interest accrued during the period April 6 to May 14, 2021." Accordingly, $689,516.00 - $10,933.94 = $678,582.06, and $848,650 − $678,582.06 = $170,067.94, which is the principal amount still owed before interest. Using the previous equation for interest, the principal amount ($170,067.94) accrued $51,104.25 in interest between May 14, 2021 and November 14, 2023. Adding together the principal and interest, the court calculated a total judgment still owed of $221,172.19—the same amount Janice proposed in her memorandum.

Because substantial evidence exists to support the court's calculations as to the money judgment, we affirm.

### 2. Survivor Benefit

Janice contends the court abused its discretion when it awarded her the CalPERS survivor benefit because the benefit is not property subject to distribution and, even if it were, the court failed to equitably distribute the benefit under RCW 26.09.080. Michael claims the survivor benefit is divisible property and the court did not abuse its discretion when it allocated the entire benefit to Janice. Because the survivor benefit is distributable property and the trial court awarded it to Janice in accordance with applicable law, we agree with Michael.

10

No Washington case directly addresses whether a pension survivor benefit is property subject to distribution, but this court has held interests not yet fully vested at the time of divorce are divisible property. *In re Marriage of Leland*, 69 Wn. App. 57, 71, 847 P.2d 518 (1993) (" 'The law has long recognized that a contingent future interest is property no matter how improbable the contingency.' ") (quoting *In re Marriage of Brown*, 15 Cal. 3d 838, 126 Cal. Rptr. 633, 638 n.8 (1976) (citation omitted)).

To equitably devise contingent benefits, courts have used two methods: the "lump sum method" and the "pay as it comes in" method.

> "Under the lump sum method the present value of the pension is determined as of the date of divorce. Generally, the employee spouse is awarded the entire pension, and the nonempolyee [sic] spouse receives other community assets of equal value as compensation for his or her one half interest. Use of the pay as it comes in method requires the court to reserve jurisdiction over the case until the employee spouse is first eligible for retirement or actually retires. The benefits are then valued and divided between the former spouse when they are actually received."

*In re Marriage of Wright*, 147 Wn.2d 184, 190, 52 P.3d 512 (2002) (alteration in original) (quoting Tami C. Budo, *When the Marital Community Is Dissolved, May One Party Dilute Their Spouses* [sic] *Interest in the Pension Benefits by Choosing to Delay Retirement?* 29 IDAHO L. REV. 1036, 1036-37 (1992-93) (footnote omitted)).

Here, Janice claims the survivor benefit is a contingent, unvested, future interest and should not be considered distributable property. But Janice provides no case law to support her claim that a survivor benefit is not property subject to distribution. To the contrary, Janice admits "there is no longer a blanket

prohibition against characterizing a contingent future interest as property" and Washington courts "handle[] such interests on a case by case basis." Accordingly, the trial did not err when it considered the CalPERS survivor benefit as distributable property.

Next, Janice contends that, even if the survivor benefit is distributable property, the court's distribution was not just and equitable because it did not properly assess the nature of the survivor benefit or the limitations and risks in the asset. Janice claims the court did not consider her "inability to currently receive any portion of the asset, the nonmarketability and nonliquidity of the asset, the fact that if [she] ever receives part of the asset it will be in monthly sums, not the full valued amount, or the nonvested nature of the asset."

To support her claim that the trial court did not equitably distribute the survivor benefit, Janice points to two California cases: *Brown*, 15 Cal. 3d 838 and *In re Marriage of Gray*, 155 Cal. App. 4th 504, 66 Cal. Rptr. 3d 87 (2007). But not only are these cases not controlling in Washington, they are not inapposite to the trial court's ruling. Both cases recognize various methods exist for dividing contingent benefits and the choice is at the discretion of the trial court. *Brown*, 15 Cal. 3d at 840; *Gray*, 155 Cal. App. 4th at 518.

Both *Gray* and *Brown* recognize two methods for distributing unvested property: (1) dividing and distributing the benefits as they become payable or (2) calculating the present value of the benefit and awarding the full value to one of the parties, then offsetting assets between the parties to account for the community value. *Gray*, 155 Cal. App. 4th at 518; *Brown*, 15 Cal. 3d at 840.

When deciding which method to use, the court may consider feasibility and risk factors, such as death, that have potential to "destroy pension rights before they mature." *Gray*, 155 Cal. App. 4th at 518. The *Gray* court noted, "If there are considerable 'uncertainties affecting the vesting or maturation of the pension,' " then the court should not use the present value approach. 155 Cal. App. 4th at 518 (quoting *Brown*, 15 Cal. 3d at 848).

Here, the trial court relied on the present value method, which is the same method put forth in the cases Janice cites to, as well as the same method used by the court in *DeRevere*.[3] Contrary to Janice's argument, the court did consider the limitations and risks associated with its approach. In its order, the court discussed the reasoning behind its decision, including the parties' initial choice in 2003 to elect the survivor benefit; the probability that Michael will predecease Janice; the de minimus increase in pension Michael would receive if he was awarded the full CalPERS pension, and the unfair tax ramifications that would result if Michael received the entire pension. The only uncertainty affecting the survivor benefit is whether Michael will predecease Janice, and the court properly assessed that risk, noting that Janice will likely outlive Michael.[4] Because the court considered all the factors under RCW 26.09.080 and used an acceptable

---

[3] *DeRevere v. DeRevere*, 5 Wn. App. 741, 491 P.2d 249 (1971). The "present value" method put forth in *Gray* and *Brown* is the same as the "lump sum" method used by Washington courts.

[4] Michael has significant health issues. Michael was medically retired from the United States Marine Corps after losing both legs in combat. He currently suffers from bleeding hemorrhoids, nerve impingement in his neck, arthritis, chronic back pain, and hearing loss. Michael has also endured two episodes of bladder cancer, nostril cancer, and an aneurysm.

method of distribution, its allocation of the survivor benefit to Janice was equitable.

The trial court did not abuse its discretion when it considered the survivor benefit distributable property or when it chose to award Janice the benefit; therefore, we affirm.

Income and Maintenance

Janice claims that the trial court abused its discretion by failing to equalize her and Michael's income and awarding maintenance that is inequitable because it leaves her in an unstable financial position. Michael contends the court was not required to equalize income and the calculation of maintenance was just and equitable. The trial court's determination of maintenance was just and equitable; therefore, we agree with Michael.

Under RCW 26.09.080, in a dissolution of marriage proceeding, the trial court must distribute property in a "just and equitable" manner. The court must consider several factors in making this determination, including (1) the nature and extent of both community and separate property, (2) the length of the marriage, and (3) the economic circumstances of the parties at the time of property division. RCW 26.09.080. The parties' standard of living during marriage and post-dissolution economic condition "are paramount concerns when considering maintenance and property awards in dissolution actions." *In re Marriage of Sheffer*, 60 Wn. App. 51, 57, 802 P.2d 817 (1990).

While property distribution must be just and equitable, it need not be equal or mathematically precise. *In re Marriage of Doneen*, 197 Wn. App. 941, 949,

14

391 P.3d 594 (2017). The distribution only needs to be fair, considering all the factors of the marriage. *Doneen*, 197 Wn. App. at 948-49. A trial court has broad discretion in awarding maintenance. *In re Marriage of Wilcox*, 3 Wn.3d 507, 517, 553 P.3d 614 (2024). A trial court's decision concerning maintenance "will not be overturned on appeal absent a showing of manifest abuse of discretion." *In re Marriage of Washburn*, 101 Wn.2d 168, 179, 677 P.2d 152 (1984).

While trial courts have broad discretion in awarding maintenance, some distributions are not allowed. Federal law prohibits state courts from dividing or distributing veteran's disability pensions. *In re Marriage of Perkins*, 107 Wn. App. 313, 318, 26 P.3d 989 (2001). This includes "awarding part of the future income stream that is the pension itself; . . . finding present value and making an offsetting award of other assets; or . . . awarding 'maintenance.' " *Perkins*, 107 Wn. App. at 324 (quoting *Mansell v. Mansell*, 490 U.S. 581, 589, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989)). But, a trial court may "consider a spouse's entitlement to an *undivided* veteran's disability pension as one factor relevant to a just and equitable distribution of property." *Perkins*, 107 Wn. App at 322.

Here, Janice contends the court failed to equalize the parties' incomes and the maintenance award leaves her with a monthly deficit, resulting in an inequitable distribution. But Janice miscalculates her total income and erroneously assumes her maintenance must be increased to account for her monthly loan repayments.

15

1. Income

Janice's calculation of her income misstates the division of the monthly CalPERS pension. Janice alleges her share is $1,750, but that was the amount before remand. In its amended supplemental findings and conclusions of law, the court noted Janice's portion of the CalPERS pension was $2,229.58.[5] Accordingly, Janice's actual monthly income, not including maintenance, is $5,601.48, not $4,302.90 as she suggests.[6] Janice also states Michael's pension share is $5,006.77, but again, this was the amount before remand. Michael's share of the pension is $4,527.19 after accounting for Janice's portion.

Factoring in the correct pension share, Michael's monthly income is $11,841.19, including his VA disability benefits, not $12,320.77, as Janice states. This will be reduced to $10,341.19 after the $1,500 maintenance payment to Janice. But, not including his VA disability benefit, Michael's monthly income, after paying maintenance, is $7,109.19—almost equal to Janice's monthly income after receiving maintenance.

Even if the parties' incomes are not equal, no abuse of discretion occurs as long as the court makes an equitable distribution based on the relevant factors, including those listed in RCW 26.09.080. Janice provides no evidence to

---

[5] William Hawes, an expert at trial, valued Michael's total CalPERS pension at $945,300, with a community portion of $625,028. Hawes indicated the community portion percentage was 66.1 percent of the total pension. Hawes also valued Michael's total monthly accrued CalPERS benefit at $6,756.77. Based on these valuations, the court determined Janice's portion of Michael's monthly CalPERS benefit was $2,229.58.

[6] This amount is calculated based on the court's supplemental findings and conclusions about a marriage.

support a claim that the trial court did not consider all factors under RCW 26.09.080. In its findings and conclusions, the court noted the extent of both community and separate property, the duration of the marriage, and the economic circumstances of both spouses, as well as Janice's desire to keep the family home. Accordingly, even if the parties' monthly incomes are not equal, the court did not abuse its discretion

2. Maintenance

Janice also claims the court failed to provide sufficient maintenance to cover her monthly expenses. Specifically, Janice contends the court did not consider that her monthly expenses are higher now than they were pretrial because of the cost of financing the equalizing payment to Michael. According to Janice's most recent financial declaration, her household expenses total $14,528, including a $8,651 monthly loan repayment to her brother. But Janice requested to keep the family home and she testified her brother would loan her "[a]s much as it takes" to be able to remain in the house. Increasing Michael's maintenance to cover her loan repayment would essentially be requiring Michael to fund his own property award through maintenance. Janice cannot complain about a maintenance award and property division that is a direct result of the court accommodating her request to keep the home. *See, e.g.*, *In re Marriage of Kaplan*, 4 Wn. App. 2d 466, 478-79, 421 P.3d 1046 (2018) (noting a party "cannot now complain that [they] received what [they] requested" simply because they are unhappy with the court's allocation of other assets to make the division equitable).

17

As noted above, the court considered all the factors under RCW 26.09.080, including Janice's request to stay in the home. The court did not abuse its discretion by awarding maintenance that left Janice with a deficit when the cause of that deficit is Janice's own request and assurances to the court.

Because the court was not required to equalize incomes, and its determination of maintenance was equitable and just, we affirm.

### Attorney Fees

Both parties seek fees on appeal. Janice contends she should be awarded attorney fees under RAP 18.1 and RCW 26.09.140, as well as costs under RAP 14.2. Michael claims any fees awarded should be to him for Janice's meritless appeal, citing to RAP 18.9. Because Janice's appeal is not without merit, the issues involved in this case are somewhat complex, and she is left with less available capital, we award Janice attorney fees.

Janice requests fees under RCW 26.09.140, RAP 18.1, and RAP 14.1. RAP 18.1 provides that applicable law may grant a party the right to recover reasonable attorney fees or expenses on review. A party requesting fees under RAP 18.1 must provide argument and citation to authority "to advise the court of the appropriate grounds for an award of attorney fees as costs." *Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9 (2012). Under RAP 14.1, a commissioner or clerk of the appellate court will award costs to the party that substantially prevails on review, unless the appellate court directs otherwise in its

decision terminating review. Because Janice does not prevail on appeal, we decline to award fees and costs under RAP 14.1.

Michael requests fees under RAP 18.9. Under RAP 18.9(a), a court may sanction a party for violation of the rules or filing a frivolous appeal. But, Janice's appeal was not meritless and the distribution of property leaves Michael with substantially more liquid assets. Because Janice's claims were not meritless, we decline to award fees or costs to Michael.

Under RCW 26.09.140, "[u]pon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." The survivor benefit, while an asset to Janice, is not available to her until Michael's death, leaving her with less available capital. Accordingly, we grant Janice costs and fees under RCW 26.09.140.

### Judge on Remand

Janice asserts if the case is remanded, it should go to a different judge because Judge Parisien has already formed strong opinions of the parties and is biased. Michael contends no evidence supports a claim of bias and Janice's request is meritless. Because we are not remanding the case, the issue is moot.

Affirmed.

WE CONCUR: