[No. 11269-8-II.   Division Two.   August 13, 1990.]

DAVE FOWLKES, ET AL, *Respondents,* v. INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS,
LOCAL NO. 76, *Appellant.*

*Richard H. Robblee* and *Hafer, Price, Rinehart & Schwerin,* for appellant.

*Jerome F. McCarthy* and *Vandeberg & Johnson,* for respondents.

PETRICH, J.—Dave Fowlkes brought this action, denominated by his counsel as a common law action sounding in contract/tort, in state court against the International Brotherhood of Electrical Workers, Local 76. A jury

returned a verdict of $100,000 for Fowlkes, from which Local 76 appeals. Local 76 claims that state court jurisdiction was preempted by the jurisdiction of the National Labor Relations Board (Board); that the suit was barred by the 6–month statute of limitations of section 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b); that the complaint should have been dismissed because of Fowlkes's failure to exhaust available union remedies; and finally, that the evidence was insufficient to support the verdict. We affirm.

Local 76 is a signatory to a collective bargaining agreement with the Southwest Washington Chapter of the National Electrical Contractors Association. The agreement, which is binding on Local 76 and assenting employers, contains provisions governing employment referral. Under the agreement, employment applicants are registered in the highest of four groups for which they qualify.[1] Applicants in the highest group are given priority for job referral, followed by those in successive groups.

---

[1]The collective bargaining agreement between the Southwest Washington Chapter of the National Electrical Contractors Association and IBEW, Local 76, provides in article 3, section 3 as follows:

"The Union shall maintain a register of applicants for employment established on the basis of the Groups listed below. Each applicant for employment shall be registered in the highest priority Group for which he qualifies.

"JOURNEYMAN WIREMAN—JOURNEYMAN TECHNICIAN

"GROUP I. All applicants for employment who have four (4) or more years' experience in the trade, are residents of the geographical area constituting the normal construction labor market, have passed a journeyman's examination given by a duly constituted local union of the I.B.E.W. or has been certified as a journeyman wireman by any Inside Joint Apprenticeship and Training Committee and who have been employed for a period of at least one (1) year in the last four (4) years under a collective bargaining agreement between the parties to this Agreement.

"GROUP II. All applicants for employment who have four (4) or more years' experience in the trade and who have passed a journeyman's examination given by a duly constituted local union of the I.B.E.W. or has been certified as a journeyman wireman by any Inside Joint Apprenticeship and Training Committee.

"GROUP III. All applicants for employment who have two (2) or more years' experience in the trade, are residents of the geographical area constituting the normal construction labor market and who have been employed for at least six months (6) in the last three (3) years in the trade under a collective bargaining agreement between the parties to this Agreement.

"GROUP IV. All applicants for employment who have worked at the trade for more than one (1) year."

To qualify in groups one and two, applicants must have passed a journeyman's examination or have been certified as a journeyman wireman by an apprentice and training committee. The agreement defines examination as "written and/or practical examinations, given by a duly constituted local union of the IBEW." Local 76 has administered only written examinations.

Local 76 must refer applicants for jobs according to the provisions of the collective bargaining agreement notwithstanding conflicting provisions in the union constitution or bylaws. Of the constitution and bylaws, only the bylaws contain any reference to employment referral. They state at article XIV, § 7 as follows:

> The handling of jobs for unemployed members shall be under the full supervision and direction of the Business Manager's office. He shall devise such means as he considers practical and fair in distributing available jobs to such members, if they are qualified to do the work. Members violating any rule or plan established shall be penalized as decided by the Executive Board.

There was evidence at trial that a group of between 20 to 25 Local 76 members had been qualified as journeymen without having taken the examination or having been certified by an apprentice and training committee. These members, known as class D wiremen, had been hired as nonunion employees by employers when Local 76 was out of referrals. Once employed, they became union members subject to the collective bargaining agreement. Under a directive from the international union, class D wiremen who had been working a minimum of 4 years were certified as journeyman wiremen.

Fowlkes belonged to Local 76 during most of his career as an electrician, which began in the 1950's. Although he had never taken the journeyman's examination, Local 76 referred him for work with Groff Electric as a journeyman in the early 1970's. He worked at Groff Electric in that capacity for 11 years.

When work slowed at Groff Electric in 1982, Fowlkes sought new work through Local 76. However, he was not allowed journeyman status because he had not passed the

Local's written journeyman's examination, and thus he fell outside of groups one and two. Fowlkes was not thereafter referred for work.

Upon Fowlkes's request, the executive board of Local 76 agreed to provide him with study materials or a tutor to assist him in passing the journeyman's examination. Fowlkes contacted the international union when the promised assistance did not come through. The northwest representative of the international union then met with Fowlkes, his attorney, and the Local 76 business manager. At this meeting it was agreed that Local 76 would provide Fowlkes with information specifying subjects he should study. Thereafter, Fowlkes received one letter from the union. At trial, Fowlkes and his attorney testified that the letter was of no assistance. Fowlkes then attempted to take the examination but did not complete it, feeling he could not pass.

After attempting to obtain work through Local 76 for about 8 months, Fowlkes began looking for nonunion work, which he quickly obtained. He commenced this action in February 1985.

### STATE COURT'S JURISDICTION

On appeal, Local 76 argues for the first time that the state court's jurisdiction was subject to preemption by the exclusive jurisdiction of the Board. The United States Supreme Court held in *San Diego Bldg. Trades Coun. v. Garmon,* 359 U.S. 236, 245, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959) that in the absence of an overriding state interest such as the maintenance of domestic peace, state and federal court jurisdiction is preempted by the exclusive primary competence of the Board when the activity which is the subject matter of the litigation is arguably protected or prohibited by the provisions of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* The Court stated that preemption is essential "if the danger of state interference with national policy is to be averted." *Garmon,* 359 U.S. at 245.

Local 76 contends that the crux of this suit is an allegation of a discriminatory hiring hall practice, a matter normally within the exclusive jurisdiction of the Board. *See*

*Local 100 of United Ass'n of Journeymen v. Borden,* 373 U.S. 690, 10 L. Ed. 2d 638, 83 S. Ct. 1423 (1963). Although Local 76 is tardy in raising the preemption issue, the issue concerns the subject matter jurisdiction of the state court and may be considered for the first time on appeal. *See International Longshoremen's Ass'n v. Davis,* 476 U.S. 380, 393, 90 L. Ed. 2d 389, 106 S. Ct. 1904 (1986) ("A claim of *Garmon* pre–emption is a claim that the state court has no power to adjudicate the subject matter of the case, and when a claim of *Garmon* pre–emption is raised, it must be considered and resolved by the state court.").

Fowlkes responds to the preemption claim by arguing that he sued Local 76 on § 7 of the bylaws, which brought this suit within § 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), an exception to *Garmon* preemption. That section provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . ., or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).[2]

██ ██ State and federal courts have concurrent jurisdiction over a breach of contract action under this statute, *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 7 L. Ed. 2d 483, 82 S. Ct. 519 (1962), but federal substantive law is controlling, *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 102, 7 L. Ed. 2d 593, 82 S. Ct. 571 (1962).

The Supreme Court held in *Smith v. Evening News Ass'n,* 371 U.S. 195, 9 L. Ed. 2d 246, 83 S. Ct. 267 (1962), that the word "between" in § 301 referred to contracts, not suits. Therefore, to invoke federal court jurisdiction under § 301, the suit had to be on a contract between an employer

---

[2]The trial court's instructions to the jury indicate, as well, that Fowlkes sued on a theory of breach of contract. Instruction number 5 explains that the local union's bylaws are the written terms of the contract of membership. Instructions numbers 6, 7, and 8 explain the burden of proof concerning a contract, the requirements for finding a breach of contract, and the duty to mitigate damages, respectively. Instruction number 9 explains the elements of an oral contract.

and a labor organization, or between labor organizations. The *Smith* Court held that a suit by a union member against his or her employer for breach of a collective bargaining agreement is judicially cognizable under § 301.

Over the years, the concept of what constitutes a contract between labor organizations or between a union and an employer has been expanded. *See United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. v. Local 334,* 452 U.S. 615, 69 L. Ed. 2d 280, 285–86, 101 S. Ct. 2546 (1981); *Kinney v. IBEW,* 669 F.2d 1222 (9th Cir. 1981) (union constitution is a contract between international and local union); *Beriault v. Local 40, Super Cargoes & Checkers of ILWU,* 501 F.2d 258 (9th Cir. 1974) (agreement supplementing collective bargaining contract is a § 301 contract); and *Gable v. Local Union 387, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers,* 695 F. Supp. 1174, 1177 (N.D. Ga. 1988) (bylaws are an addendum to contract between the union and the employee/union member). No court has held that such a contract is not required, however.

■ In this case, there is such a contract: the collective bargaining agreement, as supplemented by the bylaws. The collective bargaining agreement provided for the establishment of the priority groups for referrals. It provided that assignment to Group I would be based on the passing of an examination given by the local union or certification by an apprentice and training committee. The bylaws authorized the business manager's office to distribute jobs in a fair and practical manner. Fowlkes contended that union officials acted arbitrarily in insisting that he pass a written examination, while qualifying certain other members as journeymen on the basis of experience. That is clearly a challenge to the implementation of both the bylaws and the collective bargaining agreement.

Neither should the fact that Fowlkes did not specifically allege a violation of the collective bargaining agreement preclude this argument. *See Lewis v. Local Union 100 of Laborers Int'l Union,* 750 F.2d 1368, 1373 (7th Cir. 1984), in which the court held that Lewis's failure to explicitly

allege a breach of contract did not preclude the claim, since Lewis had alleged sufficient facts to support it. This suit is authorized under section 301 if it is brought to protect rights conferred by the collective bargaining agreement. *Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees v. Lockridge,* 403 U.S. 274, 29 L. Ed. 2d 473, 490–91, 91 S. Ct. 1909 (1971). These rights can be based upon agreements supplementary to the collective bargaining contract. *Beriault,* 501 F.2d at 262. Fowlkes's challenge to the implementation of the bylaws asserted denial of the right of a priority referral. It clearly implicated the collective bargaining agreement.

█ There is another basis supporting jurisdiction of the superior court in this case. The facts here are consistent with a claim that Local 76 breached its duty of fair representation. Such a breach occurs when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. *See Vaca v. Sipes,* 386 U.S. 171, 17 L. Ed. 2d 842, 857, 87 S. Ct. 903 (1967). Hiring hall conduct may breach this duty if the determination of an employee's referral status is arbitrary or is affected by irrelevant criteria. *See Conley v. IBEW, Local 639,* 810 F.2d 913 (9th Cir. 1987) (employee demoted from Book 1 to Book 2 because he lived outside a certain area); *Lewis v. Local Union 100 of Laborers Int'l Union, supra* (union failed to refer Lewis to jobs of same duration as other employees); *Bleier v. NLRB,* 457 F.2d 871 (3d Cir. 1972) (change of referral qualifications to require a written examination and failure to provide some sort of "grandfather" clause for employees who would lose a long–standing priority status was found not to be unfair in the absence of any credible evidence of discrimination or unequal treatment).

Fowlkes's claim is at least partially based on what he asserts was unequal treatment. The complaint, itself, alleges arbitrary conduct. This is enough to satisfy the prerequisites for an unfair representation claim.

The NLRB has declared that a breach of the duty of fair representation is also an unfair labor practice, under 29

U.S.C. §§ 157, 158.[3] The Supreme Court has apparently acquiesced in this view, but has held that unfair representation claims are not subject to preemption. *Vaca v. Sipes,* 386 U.S. at 188.

Local 76 contends that Fowlkes cannot take advantage of this exception to preemption because he did not base his case on such a claim. Indeed, Fowlkes specifically stated that his was not a fair representation case. However, jurisdiction is based on the nature of the case. It is not the label affixed to the cause of action under state law that controls the determination of the relationship between state and federal jurisdictions. Rather, it is the concern with delineating *areas of conduct* which must be free from state regulation if national policy is to be left unhampered. *Local 100 of United Ass'n of Journeymen v. Borden,* 10 L. Ed. 2d at 644. If the facts presented indicate that the subject of the cause of action is one which the court has authority to adjudicate, that is sufficient. *See Lockridge,* 29 L. Ed. 2d at 489–90 (in answer to the lack of jurisdiction defense, Lockridge sought to raise an issue of fair representation after his state court verdict was appealed to the Supreme Court. The Court held that such a claim might preserve jurisdiction, but that the evidence presented did not support it); *Lewis,* 750 F.2d at 1373 (failure to allege a breach of contract does not preclude claim). A breach of a purely intraunion contract could constitute unfair representation. The facts presented here were sufficient to support such a theory.

This case is cognizable in state court, either as a claim based on a collective bargaining agreement, or as a claim based on the duty of fair representation, premised on a breach or arbitrary enforcement of the union bylaws.

### STATUTE OF LIMITATIONS

Determination of the applicable statute of limitations for section 301 suits is based on federal law. *International Union, United Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 16 L. Ed. 2d 192, 197, 86 S. Ct. 1107 (1966).

---

[3]*Miranda Fuel Co. v. Local 553, Int'l Bhd. of Teamsters,* 140 N.L.R.B. 181 (1962), *enforcement denied,* 326 F.2d 172 (2d Cir. 1963).

Ordinarily where no limitations period is specified, it is proper to apply the most closely analogous state limitations period. However, when a rule from federal law clearly provides a closer analogy than available state statutes and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, it is appropriate to turn away from state law. *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 76 L. Ed. 2d 476, 493–94, 103 S. Ct. 2281 (1983). The *DelCostello* Court held that where section 301 claims and fair representation claims are "inextricably interdependent" and implicate "'those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective agreement and the private settlement of disputes under it,'" *DelCostello,* at 163, the unfair labor practices limitations period of § 10(b) of the National Labor Relations Act (29 U.S.C. § 160(b)) should apply.

The *DelCostello* rule is a narrow exception to the general rule; in labor law or elsewhere, application of a federal statute will be unusual, and resort to state law remains the norm for borrowing of limitation periods. *Reed v. United Transp. Union,* 488 U.S. 319, 102 L. Ed. 2d 665, 674, 109 S. Ct. 621 (1989). The 6–month statute applies only if the section 301 case is based on a fair representation claim. *IBEW v. Hechler,* 481 U.S. 851, 95 L. Ed. 2d 791, 804–05, 107 S. Ct. 2161 (1987). Moreover, the fact that a fair representation claim is involved does not necessarily require application of the 6–month statute of limitations to all claims. If the claims are not interdependent, different statutes can be applied. *See General Teamsters Union Local 174 v. Trick & Murray, Inc.,* 828 F.2d 1418, 1423–24 (9th Cir. 1987). *Daigle v. Gulf State Utils. Co., Local 2286,* 794 F.2d 974, 977 (5th Cir.), *cert. denied,* 479 U.S. 1008 (1986).

In this case, there is language in the collective bargaining agreement, by itself, upon which a section 301 claim could be based, and arguably there is enough evidence in the record to support such a claim. However, Fowlkes's case primarily focused on section 7 of the bylaws requiring that

jobs be distributed in a fair and practical manner. To establish his claim of unfairness, Fowlkes introduced evidence concerning the class D wiremen who were certified as journeyman wiremen without having taken the examination or receiving certification from the apprenticeship committee, while he was denied such certification after having served competently as a journeyman wireman in the construction industry for several years; evidence that the written examination required by the Local had little or no application to journeyman electrician work in the trade; and that his extensive and successful employment in the trade justified a practical examination as allowed by the collective bargaining agreement, rather than the written one, to determine his qualification as a competent journeyman electrician.

When the essence of the complaint is that the union failed to act fairly on the member's behalf, it is so closely related to fair representation claims that the federal limitations statute should be applied. *See Conley v. IBEW, Local 639,* 810 F.2d 913, 915 (9th Cir. 1987).[4] Here, any contractual right to a practical examination arose from the collective bargaining agreement, but jury instructions excluded that document as a source for the rights alleged. That did not mean that the jury could not consider it, of course, and the jury could have found that the union's actions were unfair solely on the basis of the collective bargaining agreement. However, since the fairness provision of the bylaws was a necessary part of their decision, fair representation and contract issues have become intertwined in this case.

■ Nevertheless, the federal limitations statute need not be applied in this instance. The Ninth Circuit court has held that *DelCostello* is not to be applied retroactively to hybrid fair representation–section 301 cases unless its effect would be to lengthen the otherwise–applicable state statute

---

[4]*Conley* is somewhat similar to this case. That complaint was also based on hiring hall practices. Conley had been demoted from Book I to Book II because he was not a resident of the proper geographical area. He alleged both breach of contract and violation of the duty of fair representation. The court found his to be a hybrid case and applied the 6–month statute.

of limitations. *Aragon v. Local 572, Federated Dep't Stores, Inc.,* 750 F.2d 1447, 1451 (9th Cir.), *cert. denied,* 474 U.S. 902, 88 L. Ed. 2d 229, 106 S. Ct. 229 (1985); *Glover v. United Grocers, Inc.,* 746 F.2d 1380, 1382 (9th Cir. 1984); *Bower v. Bunker Hill Co.,* 675 F. Supp. 1254, 1257 (E.D. Wash. 1986). The determination is based upon the date on which the cause of action accrued. *See Aragon,* 750 F.2d at 1450.[5]

The union contended below that Fowlkes's cause of action arose in November 1982, when union officials refused to let him sign Book I. Certainly, it had accrued by May 11, 1983. By that time, Fowlkes had acquired an attorney, had met with the executive board and the representative from the international office, had asked to be placed on the list

---

[5]We are mindful of the decision in *Kelley v. IBEW,* 803 F.2d 516 (9th Cir. 1986), but do not find that it requires a different result. The *Kelley* court announced a general rule barring causes of action which arose prior to the decision in *DelCostello* and which were not filed within 6 months of that decision. This rule does not apply without exception, however. When the *DelCostello* rule is extended to statutes or categories not previously addressed or reasonably foreseeable, plaintiffs should be given a reasonable amount of time after the announcement of the extension in which to file their claims. *See Kelly v. Burlington N.R.R.,* 896 F.2d 1194 (9th Cir. 1990) (workers who sued employer and union for breach of collective bargaining agreement and breach of duty of fair representation under Railway Labor Act were entitled to a reasonable time after announcement of decision extending *DelCostello* to suits under the RLA); *International Ass'n of Machinists v. Aloha Airlines, Inc.,* 790 F.2d 727, 736 (9th Cir. 1986) (*DelCostello* rule extended to cases arising under the RLA and to new category of case, involving a suit only against an employer, "one step removed from a hybrid breach of collective bargaining agreement/fair representation action," but rule applied only to cases filed after *Aloha*); and *Stolz v. United Bhd. of Carpenters,* 648 F. Supp. 1439 (D. Nev. 1986) (*DelCostello* not previously applied to cases arising under the Labor–Management Reporting and Disclosure Act of 1959, so 6–month limitation period not applied).

Before 1986, all of the cases to which the Supreme Court and the Ninth Circuit applied the *DelCostello* statute of limitations arose in the context of a breach of collective bargaining and fair representation claims, the kinds of disputes specifically found by *DelCostello* to require rapid resolution. In 1986, the 6–month statute of limitations was applied to a slightly different situation, involving a suit by a union against the employer. *See International Ass'n of Machinists v. Aloha Airlines, Inc., supra.* Not until 1987 was the *DelCostello* rule extended to a case like Fowlkes's suit. *See Conley v. IBEW, Local 639, supra.* In 1985, when Fowlkes filed his action, he had no reason to believe that *DelCostello* applied to him. He was at least entitled to a 6–month grace period after the announcement of the decision in *Aloha Airlines* (or, in this case, the 3–year state statute of limitations, which would be the shorter of the two periods).

in Book I, had been told that he must take the test and that he would be given some kind of assistance in preparing for it, had received whatever assistance the union was inclined to provide, and had seen the examination and determined that he could not pass it. *DelCostello* was decided on June 8, 1983. Fowlkes's cause of action had accrued by then. The federal statute of limitations is shorter than the applicable state statute. The *DelCostello* rule does not apply to this case. The state statute of limitations controls.[6]

## EXHAUSTION OF REMEDIES

Local 76 contends that this case was not appropriately before the court because Fowlkes had failed to exhaust the grievance procedures available in the union constitution. According to the union, article 27, section 12 of the union constitution provides for an appeal to the vice–president by any member who feels the local union has treated him unjustly. (The record does not include a copy of the constitution.) Additionally, article III, section 14 of the collective bargaining agreement provides an appeals committee to hear complaints arising out of the referral process.

Section 101(a)(4) of the Labor–Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a)(4) (1988) states, in relevant part:

> No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency . . . *Provided,* That any such

---

[6]The union contends that the applicable state statute of limitations is not the 3–year period for contract cases, but the 3–month period for suits seeking to vacate arbitration awards. It is clearly wrong. Its argument is based on *United Parcel Serv. v. Mitchell,* 451 U.S. 56, 67 L. Ed. 2d 732, 101 S. Ct. 1559 (1981) and its progeny, which applied the vacation of arbitration statute in cases involving suits asserting that the union had been negligent in handling employees' claims against the employer for breach of the collective bargaining agreement. *Mitchell* was never intended to apply to suits which did not involve issues pertaining to the grievance–arbitration procedure. *See United Parcel Serv. v. Mitchell,* 451 U.S. at 62; *Singer v. Flying Tiger Line, Inc.,* 652 F.2d 1349, 1353 (9th Cir. 1981). Thus, if the collective bargaining agreement does not provide for arbitration as the exclusive and final remedy for the issues being litigated, *Mitchell* does not apply. *Daigle v. Gulf State Utils. Co., Local 2286,* 794 F.2d 974 (5th Cir. 1986). This was a member–union dispute. No arbitration provision applied to it. The 3–month statute of limitations is clearly inappropriate.

> member may be required to exhaust reasonable hearing proce-
> dures (but not to exceed a four–month lapse of time) within
> such organization, before instituting legal or administrative
> proceedings against such organizations or any officer thereof
> . . ..

The general rule requiring members to exhaust internal remedies before instituting court proceedings does not give the union authority to compel the members to pursue internal remedies before resorting to the courts. Rather, it grants the court discretionary power to stay proceedings if it determines that internal union procedures should be exhausted. *Joinette v. Local 20, Hotel & Motel Restaurant Employees & Bartenders Union,* 106 Wn.2d 355, 360–61, 722 P.2d 83 (1986). The decision not to stay the court proceedings was not only reasonable, but required. Fowlkes had presented his case to both local and international officials. He had spent 8 months attempting to resolve the problem without success, and there was nothing in the record to suggest that further efforts would be worthwhile. Since the union provides no authority to require a member to spend more than 4 months exhausting internal remedies, *see NLRB v. Industrial Union of Marine & Shipbuilding Workers, Local 22,* 391 U.S. 418, 20 L. Ed. 2d 706, 713, 88 S. Ct. 1717 (1968), the trial court's decision to permit the case to go forward was the only proper one.

Finally, Local 76 argues that the evidence is insufficient to support the verdict. It insists that a fair representation claim is premised on a claim that the union breached its duty by wrongfully negotiating the collective bargaining agreement. It argues that there was no evidence of dishonesty or any improper ulterior motive on the part of the union in negotiating the agreement.

■ Our review of the record fails to disclose that the claim of insufficiency of the evidence to support the verdict was ever presented to the trial court in a motion for a new trial, or otherwise. The burden of supplying the record rests on Local 76. *Allemeier v. UW,* 42 Wn. App. 465, 712 P.2d 306 (1985), *review denied,* 105 Wn.2d 1014 (1986). The appellate court reviews only questions passed upon by the trial court. Since on this record the claim of insufficiency of

the evidence was not presented to the trial court, it is not subject to review. *Tacoma Grocery Co. v. Byron Barlow,* 12 Wash. 21, 40 P. 380 (1895).

Furthermore, even if we were to review this assignment, we are satisfied that this assignment lacks merit. It is true that earlier fair representation suits involved claims against unions for breach of their duty in negotiating a collective bargaining agreement. *See Ford Motor Co. v. Huffman,* 345 U.S. 330, 97 L. Ed. 1048, 73 S. Ct. 681 (1953). However, fair representation claims now embrace arbitrary and discriminatory hiring hall practices by the union. *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union 6,* __ U.S. __, 107 L. Ed. 2d 388, 110 S. Ct. 424 (1989). The evidence here was sufficient to support such a claim.

Affirmed.

ALEXANDER, C.J., and WORSWICK, J., concur.

After modification, further reconsideration denied April 23, 1991.