**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| In the Matter of the Marriage of | No. 53366-9-II |
| HEIDI A. KAUFMAN, | |
| Respondent, | |
| and | PUBLISHED OPINION |
| GEOFFREY A. KAUFMAN, | |
| Appellant. | |

GLASGOW, J.—In 2008, Geoffrey and Heidi Kaufman negotiated a property settlement agreement that was fully incorporated into their marriage dissolution decree. The property settlement agreement and dissolution decree provided for an equal division of the Kaufmans' community property, including Geoffrey's[1] military retirement, and awarded Heidi permanent, "non-modifiable" spousal maintenance. Am. Clerk's Papers (ACP) at 8. Under the spousal maintenance provision, Heidi was to receive monthly spousal maintenance payments equal to 50 percent of Geoffrey's monthly United States Department of Veteran's Affairs (VA) disability benefit or 50 percent of the amount of monthly military retirement he waived to receive VA disability benefits. If Geoffrey's VA disability benefit increased, Heidi would receive a proportionate increase in her share. There was no appeal of the dissolution decree.

In 2018, Geoffrey's disability rating increased, which permitted him to concurrently receive the full amount of his military retirement and VA disability benefits without waiver, increasing his overall monthly income. Geoffrey then stopped paying Heidi spousal maintenance.

---

[1] For clarity, we refer to the parties by their first names.

Heidi filed a motion to enforce the spousal maintenance provision of the dissolution decree. The trial court granted Heidi's enforcement motion and awarded her back payments and attorney fees.

Geoffrey appeals the order granting Heidi's motion to enforce the dissolution decree, arguing that the spousal maintenance provision in the dissolution decree violated federal and state law, making it void. He also asserts that the unappealed dissolution decree could not have res judicata effect because the spousal maintenance provision was void from its inception. Finally, Geoffrey argues that the trial court erred by awarding Heidi attorney fees below. Heidi requests attorney fees on appeal.

This court recently published diverging opinions in two cases involving similar issues. Here, we follow *In re Marriage of Weiser*,[2] apply res judicata, and conclude that the trial court did not lack subject matter jurisdiction when it entered the original dissolution decree. In doing so, we depart from the reasoning in *In re Marriage of Tupper*.[3]

The Kaufmans' dissolution decree was a valid, unappealed final judgment on the merits, and the spousal maintenance provision is not void. Res judicata prevented Geoffrey from collaterally challenging the validity of the dissolution decree in his response to Heidi's motion to enforce. The trial court did not lack subject matter jurisdiction to enter the dissolution decree, and Geoffrey has not shown any other basis for setting it aside. The trial court properly awarded Heidi attorney fees under RCW 26.18.160, and we grant her request for attorney fees on appeal. We affirm.

---

[2] 14 Wn. App. 2d 884, 888, 475 P.3d 237 (2020).

[3] 15 Wn. App. 2d 796, 806, 478 P.3d 1132 (2020).

FACTS

Geoffrey and Heidi were married in 1985, separated in 2007, and in 2008 entered into a property settlement agreement that was fully incorporated into their dissolution decree. Geoffrey served in the Navy during the Kaufmans' marriage. In 2008, Geoffrey was retired and the VA had deemed him 40 percent disabled. Geoffrey received military retirement, but he had elected to waive some of his military retirement in favor of VA disability benefits due to his 40 percent disability rating. Accordingly, his military retirement pay was reduced by the amount of the VA disability he received.

Geoffrey and Heidi, each represented by counsel, negotiated a property settlement agreement. The property settlement agreement provided for an equitable division of community assets and debt and stated that Heidi would have a "[o]ne-half interest in [Geoffrey's] Navy retirement . . . pursuant to an Order for Division of Military Retirement." Am. Sealed Clerk's Papers (ASCP) at 240. The trial court entered a military pay division order that same day.

The property settlement agreement also provided that Geoffrey would pay Heidi "spousal maintenance in a sum representing 50 [percent] of [his] Navy VA waiver/disability." ASCP at 239. The spousal maintenance payments were nonmodifiable and permanent. Because Geoffrey at that time received $610 per month in VA disability pay, the agreement stated that Heidi would receive $305 per month in maintenance. The property settlement agreement further provided:

> In the event the VA waiver/disability portion and payment increases (either as a result of [cost of living adjustments] or as a result of an increase in the VA waiver portion to the detriment of the retainer pay), [Heidi] shall be entitled to her proportionate increase (50 [percent] of the adjusted VA waiver/disability) in spousal maintenance and effective as of the date of the adjustment.

*Id.* Geoffrey was also required to provide Heidi with updated information and documentation about his VA disability eligibility and payments.[4]

The trial court then entered findings of fact and conclusions of law and a decree dissolving the Kaufmans' marriage. The trial court found that the property settlement agreement should be approved, including the maintenance provision. The trial court further concluded that the property settlement agreement was fair and equitable. The dissolution decree provided that Geoffrey and Heidi's community property would be "identified and divided in the Property Settlement Agreement." ACP at 7. The decree replicated the property settlement agreement's maintenance provision nearly verbatim, changing only the commencement date for payments. Neither party appealed the dissolution decree.

In 2018, the VA increased Geoffrey's disability rating to 60 percent. In accordance with 10 U.S.C. § 1414, Geoffrey then began receiving the full amount of both his military retirement and VA disability benefit, increasing his overall monthly income.

Geoffrey wrote a letter to Heidi informing her that because his disability rating had been elevated, he no longer had to waive any of his retirement pay and he believed the maintenance provision no longer applied. Geoffrey stated, "The only change to you is you will now receive all that is owed to you in one monthly payment (from [the Defense Finance Accounting Service] (DFAS)) instead of two (one from DFAS and one from me)." ASCP at 268. Geoffrey stopped making maintenance payments to Heidi in May 2018.

---

[4] The parties appear to agree that the term "waiver" in the property settlement agreement and dissolution decree was intended to refer to the amount of VA disability benefits Geoffrey received, which was then equal to the amount of military retirement he was required to waive when his disability rating was less than 50 percent.

Heidi's lawyer wrote a letter to Geoffrey instructing him to resume maintenance payments and to pay Heidi the amount he had withheld. The letter stated, "[T]he amount you receive under the 'VA waiver' or 'VA disability' is just the amount upon which the amount to be paid in maintenance is determined. Now that your 'VA waiver' is simply 'VA disability' the requirement for maintenance still applies." ACP at 40.

Geoffrey did not resume maintenance payments. Heidi filed a motion to enforce the maintenance provision of the dissolution decree. Heidi argued that the spousal maintenance provision remained enforceable and that res judicata prevented Geoffrey from collaterally attacking the terms of the dissolution decree. Heidi also asked for attorney fees under RCW 26.09.140.

In response to Heidi's enforcement motion, Geoffrey advanced two main arguments. First, he contended that he had "completely complied" with the maintenance provision so there was nothing to enforce. ACP at 148. Geoffrey argued that under the terms of the spousal maintenance provision, he "was to pay [Heidi] 50 [percent] of any amount of the waiver/disability and [Heidi] was to then get a check for the difference of 50 [percent] of [Geoffrey's] taxable retirement pay." ACP at 147. "The maintenance clause dividing [Geoffrey's] waiver/disability . . . was purely a way of capturing the difference in the reduction caused by the waiver itself." *Id*.[5]

Second, Geoffrey argued that the trial court could not enforce the maintenance provision because it divided his VA disability benefits in violation of state and federal law. Specifically, he argued that the law prohibited state courts from ordering a service member to divide military

---

[5] Geoffrey does not raise this interpretation argument on appeal. Although Geoffrey describes his communications with Heidi regarding his reasoning for stopping her monthly maintenance payments, he does not argue that we should interpret the maintenance language in the decree to absolve him of paying maintenance to Heidi under the current circumstances. Nor does he provide legal authority for such an argument.

disability payments or indemnify the former spouse for any losses resulting from the service member receiving disability payments instead of retirement payments. Geoffrey argued that the dissolution decree was void when entered because it illegally divided his military disability retirement and was not subject to res judicata. Geoffrey did not file a CR 60(b) motion to vacate the dissolution decree or seek to modify the maintenance award under RCW 26.09.170(1), however.

The trial court granted Heidi's motion to enforce. The trial court found that the agreement did not require Geoffrey to make payments from his disability retirement pay, nor did any court order require him to do so, and "the aggregate amount of the VA [w]aiver/[d]isability is but a means by which they agreed on a figure for spousal maintenance as part of an overall, fair division of property and debts." ACP at 231. The trial court concluded that "the property settlement agreement [was] a contractual obligation requiring the former husband to pay [a certain] amount for spousal maintenance." ACP at 232. Without explicitly referencing res judicata, the trial court ruled that the agreement was "a binding contract," was "not void[] or voidable," and was "enforceable per the original terms." *Id.* The trial court granted Heidi's request for attorney fees.

In October 2019, the trial court entered a monetary judgment against Geoffrey for $10,435.51 in past due spousal maintenance, plus $1,052.42 in interest. The trial court also awarded judgment against Geoffrey for $10,000.00 for attorney fees and costs.

Geoffrey appeals.

## ANALYSIS

A.   Military Disability Retirement in Marriage Dissolution Proceedings

The federal government provides retirement pay to retired service members. *Howell v. Howell*, ___ U.S. ___, 137 S. Ct. 1400, 1402-03, 197 L. Ed. 2d 781 (2017). If a service member is

disabled, they may receive disability retirement. *Id.* at 1403. A veteran may receive VA disability benefits if the VA determines that the service member is disabled due to a specific service-connected injury or illness. *See* 38 U.S.C. § 1110. A service member who is less than 50 percent disabled can only elect to receive VA disability benefits if they waive an equal amount of retirement pay. 38 U.S.C. § 5305; *see* 10 U.S.C. § 1414; *see also Howell*, 137 S. Ct. at 1403. In contrast, a qualifying service-related injury that gives the veteran a disability rating greater than 50 percent allows the service member to receive both retirement pay and VA disability pay without waiver of any portion of their retirement pay. 10 U.S.C. § 1414.

In 1981, the United States Supreme Court held in *McCarty v. McCarty*, 453 U.S. 210, 211-236, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981), that Congress did not intend any form of military retirement pay to be treated as community property subject to division in marriage dissolution and federal law preempted state courts from dividing military retirement. In 1982, Congress responded to *McCarty* by passing the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. § 1408. The USFSPA provided that disposable retirement pay *could* be divided as community property in a marriage dissolution. 10 U.S.C. § 1408(c)(1), (d)(5). However, the USFSPA "expressly excluded from its definition of 'disposable retired pay' amounts deducted from that pay 'as a result of a waiver . . . required by law in order to receive' disability benefits." *Howell*, 137 S. Ct. at 1403 (alteration in original) (quoting 10 U.S.C. § 1408(a)(4)(A)(ii)); *see also* 10 U.S.C. § 1408(a)(4)(A)(iii).

In 1989, the Court held in *Mansell v. Mansell* that the USFSPA preempted state courts from treating military disability retirement as divisible community property. 490 U.S. 581, 589, 594, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989). The Court included a footnote explaining that res judicata had been raised, but "[w]hether the doctrine of res judicata, as applied in California, should

7

have barred the reopening of pre-*McCarty* settlements is a matter of state law over which we have no jurisdiction." *Id.* at 586 n.5. Thus, the Court did not address this issue.

Then in 1992, the Washington Supreme Court decided *In re Marriage of Kraft*, 119 Wn.2d 438, 832 P.2d 871 (1992). Citing *Mansell*, the *Kraft* court held that military disability retirement could be considered as an economic circumstance in an equitable distribution of property, so long as the court did not offset the value of the military disability retirement with dollar-for-dollar compensation from another source. 119 Wn.2d at 447-48. In 2001, in *Perkins v. Perkins*, 107 Wn. App. 313, 316-17, 327, 26 P.3d 989 (2001), we held that the trial court impermissibly divided and distributed veteran's disability benefits when the trial court required the military spouse to pay his wife spousal maintenance equal to the disposable military retirement he waived to receive disability benefits.

Finally, in 2017, the United States Supreme Court decided *Howell*. In *Howell*, the nonmilitary spouse was awarded a portion of her husband's military retirement. 137 S. Ct. at 1404. Long after the dissolution was final, the husband waived a portion of his retirement in favor of disability benefits. *Id.* Citing *Mansell*, the Court held that the USFSPA preempted the state court from ordering the husband to pay his former spouse by dividing his disability benefits. *Id.* at 1405-06. Nor could he be ordered to reimburse or indemnify his former spouse for military retirement payments that would have been made but for the shift to disability benefits. *Id.* The nonmilitary spouse had no vested right in ongoing payments. *Id.*

The *Howell* Court emphasized that the state court ordered the military spouse to indemnify his former wife "dollar for dollar" to restore the portion of retirement pay that was lost. *Id.* at 1406. The state court's decision "rested entirely upon the need to restore [the nonmilitary spouse's] lost portion." *Id.* The Court recognized that any attempt to "'reimburse'" or "'indemnify'" the

nonmilitary spouse was merely a semantic difference and ultimately inconsistent with Congress's intent to exclude disability benefits from military retirement that could be divided and awarded in a dissolution. *Id.* Such indemnification was improper under the federal statute and *Mansell. Id.* Significantly, the *Howell* Court did not address res judicata or mention *Mansell*'s footnote 5, leaving the res judicata analysis to the state courts.

B.      Res Judicata

Heidi argues that under the doctrine of res judicata, the trial court properly enforced the final, unappealed 2008 dissolution decree. Even if the trial court made a legal error in the dissolution decree, she contends the trial court did not lack subject matter jurisdiction to enter the dissolution decree, nor was the dissolution decree otherwise void. We agree.

1.      Background on res judicata

Res judicata is designed to protect the finality of judgments. *Weiser*, 14 Wn. App. 2d at 903. The "threshold requirement" for res judicata to apply "'is a valid and final judgment on the merits in a prior suit.'" *Id.* (quoting *Ensley v. Pitcher*, 152 Wn. App. 891, 899, 222 P.3d 99 (2009)). The subsequent and prior action must also involve "(1) the same subject matter, (2) the same cause of action, (3) the same persons or parties, and (4) the same quality of persons for or against whom the decision is made.'" *Id.* (quoting *Williams v. Leone & Keeble, Inc.*, 171 Wn. 2d 726, 730, 254 P.3d 818 (2011)).

If res judicata applies, a final judgment may be reopened "'only when specifically authorized by statute or court rule.'" *Id.* (quoting *In re Marriage of Shoemaker*, 128 Wn.2d 116, 120, 904 P.2d 1150 (1995)). CR 60 defines the limited circumstances under which a party may obtain relief from a final unappealed judgment. Moreover, RCW 26.09.170(1), which governs the modification of marriage dissolution decrees, prohibits the trial court from modifying "'its own

decree in the absence of conditions justifying the reopening of the judgment.'" *Id.* at 904 (quoting *In re Marriage of Thompson*, 97 Wn. App. 873, 878, 988 P.2d 499 (1999)). In the marriage dissolution context, "res judicata can prevent the reopening of the property settlement and . . . is a matter of state law." *Id.* at 897 (citing *Mansell*, 490 U.S. at 586 n.5). We review de novo whether an action is barred by res judicata. *Id.* at 903.

2.    <u>Application of res judicata to the dissolution decree</u>

Geoffrey does not dispute that the four res judicata factors are satisfied. Instead, Geoffrey contends that the spousal maintenance provision of the dissolution decree and property settlement agreement were void ab initio because the trial court lacked subject matter jurisdiction, and the decree is thus not subject to res judicata. Geoffrey argues that the spousal maintenance provision was void because he claims that *Howell*, *Kraft*, and *Perkins* deprive state courts of subject matter jurisdiction to enter orders that divide military disability retirement or order indemnification. Geoffrey also claims that the provision was void because the trial court lacked any "inherent power" to enter an order that violated federal and state law, which he asserts is a basis for voidness distinct from lacking subject matter jurisdiction. Br. of Appellant at 18. We disagree.

a.    Subject matter jurisdiction

"'Subject matter jurisdiction refers to a court's ability to entertain a type of case, not to its authority to enter an order in a particular case.'" *Boudreaux v. Weyerhaeuser Co.*, 10 Wn. App. 2d 289, 295, 448 P.3d 121 (2019) (internal quotation marks omitted) (quoting *In re Marriage of Buecking*, 179 Wn.2d 438, 448, 316 P.3d 999 (2013)). "[W]here the court 'has jurisdiction of the parties and of the subject matter, and has the power to make the order or rulings complained of,'" but its order "'is based upon a mistaken view of the law or upon the erroneous application of legal principles, it is erroneous,' as opposed to void for lack of jurisdiction." *Ronald Wastewater Dist.*

*v. Olympic View Water & Sewer Dist.*, 196 Wn.2d 353, 372-73, 474 P.3d 547 (2020) (internal quotation marks omitted) (quoting *Dike v. Dike*, 75 Wn.2d 1, 7, 448 P.2d 490 (1968)). "'If the type of controversy is within the subject matter jurisdiction, then all other defects or errors go to something other than subject matter jurisdiction.'" *Weiser*, 14 Wn. App. 2d at 905 (internal quotation marks omitted) (quoting *Dougherty v. Dep't of Labor & Indus.*, 150 Wn.2d 310, 316, 76 P.3d 1183 (2003)).

It is well established that superior courts are courts of general jurisdiction with the "'power to hear and determine all matters, legal and equitable, . . . except in so far as these powers have been expressly denied.'" *Id.* (alteration in original) (internal quotation marks omitted) (quoting *In re Marriage of Major*, 71 Wn. App. 531, 533, 859 P.2d 1262 (1993)). Under article IV, section 6 of the Washington Constitution, superior court jurisdiction extends to "all cases and . . . all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court." *See also Weiser*, 14 Wn. App. 2d at 905. RCW 26.12.010 specifically gives the superior court jurisdiction to hear family law cases and to enter orders addressing "the distribution of property or obligations." As we explained in *Weiser*, "In light of this broad constitutional and statutory grant of subject matter jurisdiction, 'courts may only find a lack of jurisdiction under compelling circumstances, such as when it is explicitly limited by the Legislature or Congress.'" *Id.* (quoting *Major*, 71 Wn. App. at 534).

In *Weiser*, the nonmilitary spouse was awarded a share of her former husband's military retirement in a dissolution agreement. *Id.* at 889. The husband then waived his military retirement in favor of military disability retirement. *Id.* at 889-90. We rejected the husband's assertion that the trial court erred by enforcing the final, unappealed dissolution decree and ordering him to compensate his wife for her share of the waived military retirement. *Id.* at 890-91. We held that

res judicata protected the finality of the unappealed prior order even where the trial court's enforcement of that order resulted in a property division that contradicted federal and state law because errors of law do not "automatically open [the trial court's] judgments to collateral attack." *Id.* at 905-06.

Our discussion regarding res judicata in *Weiser* relied on the United States Supreme Court's holding in *Mansell*, 490 U.S. at 586, 594, and the California Court of Appeal's decision on remand in that case, *In re Marriage of Mansell*, 217 Cal. App. 3d 219, 234-36, 265 Cal. Rptr. 227 (1989) (*Mansell* II). Although the Court ruled in *Mansell* that federal law prohibited dividing military disability retirement as community property, the Court's opinion also "establishe[d] that res judicata [could] prevent the reopening of the property settlement and . . . res judicata is a matter of state law." *Weiser*, 14 Wn. App. 2d at 897 (citing *Mansell*, 490 U.S. at 586 n.5).

On remand, the California Court of Appeal determined that it could not reopen the prior unappealed final order dividing the couple's property. *Mansell* II, 217 Cal. App. 3d at 234-36. Under res judicata, the Court of Appeal affirmed the prior order enforcing the division of the husband's military disability retirement as community property despite the fact that it clearly contradicted federal law. *Id.* at 236. The United States Supreme Court denied certiorari. *Mansell v. Mansell*, 498 U.S. 806, 111 S. Ct. 237, 112 L. Ed. 2d 197 (1990).

*Weiser* also relied on *In re Marriage of Brown*, 98 Wn.2d 46, 48, 653 P.2d 602 (1982), in which two appellants in consolidated cases argued that pre-*McCarty* orders dividing military retirement pay were void and subject to collateral attack because the trial courts lacked subject matter jurisdiction to divide military retirement pay under *McCarty*. The Washington Supreme Court held that the division of military retirement benefits "should be regarded as an error of law

rather than a lack of subject matter jurisdiction and [thus] is not open to collateral attack." *Brown*, 98 Wn.2d at 48.

Here, Geoffrey attempts to distinguish this case from *Mansell* II and *Brown* on the basis that in those cases, the orders dividing the service members' disability retirements were legal at the time they were entered because the United States Supreme Court had not yet decided *McCarty*. By contrast, Geoffrey argues that Washington law already prohibited dividing VA disability benefits when the trial court entered the Kaufmans' dissolution decree. *See Kraft*, 119 Wn.2d at 451; *Perkins*, 107 Wn. App. at 327. However, res judicata also shields a prior unappealed order that was incorrect even at the time it was made, so long as the court had personal and subject matter jurisdiction. *Weiser*, 14 Wn. App. 2d at 905-06; *see Dike*, 75 Wn.2d at 8.

To the extent Geoffrey argues that the doctrine of federal preemption deprived the state court of subject matter jurisdiction to enter an order that violated the USFSPA, we reject that argument. Geoffrey cites to *Fowlkes v. International Brotherhood of Electrical Workers, Local No. 76*, 58 Wn. App. 759, 764, 795 P.2d 137 (1990), for the premise that preemption affects subject matter jurisdiction and may be raised at any time. But in *Fowlkes*, the issue was whether the National Labor Relations Act gave exclusive jurisdiction to the National Labor Relations Board to adjudicate a labor dispute. 58 Wn. App. at 763. By contrast, nothing in the USFSPA deprived state superior courts of their power to hear family law matters and order property distributions, especially where that jurisdiction is explicitly conferred by the Washington Constitution and RCW 26.12.010.

The Washington Supreme Court recently elaborated on the distinction between errors of law and lack of subject matter jurisdiction in *Ronald Wastewater*, 196 Wn.2d at 371-73. There, the trial court lacked subject matter jurisdiction to enter an order adjudicating the annexation of a

sewer district because the nature of the controversy was annexation, and "annexation authority is a plenary power enjoyed by the State, which the legislature may delegate to courts by statute." *Id.* at 373. Thus, the statutes related to annexation defined the scope of the court's jurisdiction in that area. Here, by contrast, the state constitution defines the superior court's jurisdiction broadly and superior courts are statutorily authorized to adjudicate family law claims. WASH. CONST. art. IV, § 6; RCW 26.12.010. Orders dividing property in dissolution decrees are within the superior court's "proper exercise of authority" and any legal errors in this case were not jurisdictional defects. *Ronald Wastewater*, 196 Wn.2d at 373.

    b.  Inherent power to enter an order

Geoffrey also argues that the spousal maintenance provision is void under Washington law because the trial court lacked "inherent power" to enter the order. Reply Br. of Appellant at 12 (citing *State ex rel. Turner v. Briggs*, 94 Wn. App. 299, 302-303, 971 P.2d 581 (1999); *Dike*, 75 Wn.2d at 7). Following this court's reasoning in *Weiser* and departing from this court's approach in *Tupper*, we reject this argument.

As an initial matter, the *Ronald Wastewater* court clarified that the inquiry as to whether a trial court had the inherent power to afford particular relief is a "component[] of subject matter jurisdiction." 196 Wn.2d at 372. The Supreme Court explained that "the form of relief is limited by the nature of the particular claim." *Id.* For example, where a party brings an action only to quiet title, the trial "court would exceed its relief authority if it were to issue tax relief." *Id.* The authority to issue a particular form of relief follows the "overall authority to adjudicate the particular claim" and is a "component[] of subject matter jurisdiction." *Id.*

Geoffrey relies on *Dike* and *Turner*, but neither case held that a legal error deprives a court of its inherent power to enter the order. *See Dike*, 75 Wn.2d at 7 ("'Where a court has jurisdiction

14

of the parties and of the subject matter, and has the power to make the order or rulings complained of, but the latter is based upon a mistaken view of the law or upon the erroneous application of legal principles, it is erroneous.'" (quoting *Robertson v. Commonwealth of Virginia*, 181 Va. 520, 536, 25 S.E.2d 352 (1943))); *see also Turner*, 94 Wn. App. at 303-05 (concluding that the trial court did not lack inherent power to make a decision where it had both personal and subject matter jurisdiction and that the relevant orders were not void, even if they were voidable). And in *Ronald Wastewater*, the Supreme Court contrasted legal and jurisdictional errors. 196 Wn.2d at 373. Legal errors occur "where the court has the authority to adjudicate the claim and errs in its application of law or fact. Whereas jurisdictional deficiencies [occur when] a court act[s] outside of its adjudicative authority" and "lacks any power to issue relief," such as ordering annexation in an area not covered by the legislature's delegation of annexation authority to the superior courts. *Id.* Geoffrey offers no authority for his argument that a court loses its inherent power to enter an order if the order contains a legal error.

Geoffrey did not appeal the dissolution decree which adopted the language from the property settlement agreement that Geoffrey now seeks to avoid. Nor does he contest that Heidi's motion to enforce the dissolution decree and the 2014 military pay division order involved "(1) the same subject matter, (2) the same cause of action, (3) the same persons or parties, and (4) the same quality of persons for or against whom the decision [was] made as did [the] prior adjudication" leading to the 2008 dissolution decree. *See Williams*, 171 Wn. 2d at 730. Res judicata therefore applies and Geoffrey's subject matter jurisdiction argument fails.

We note that another panel of this court recently came to a contrary conclusion in *Tupper*. In that case, a dissolution decree required the husband to pay 50 percent of his United States Social Security Administration benefits to his former wife, something that is prohibited by federal statute.

15

*Tupper*, 15 Wn. App.2d at 800-01. Years later, the wife moved to enforce the decree and the commissioner granted her motion. *Id.* at 800. After the husband unsuccessfully moved for revision, he appealed and this court reversed. *Id.* Citing *Dike*, the *Tupper* panel posited that a judgment may be void where the court entering the judgment lacks subject matter or personal jurisdiction *or* where "it does not possess the inherent power to enter the particular order involved." *Id.* at 801. The *Tupper* panel conceded that subject matter jurisdiction was satisfied in that case but held the trial "court did not have the power, inherent or otherwise, to enter the order transferring and distributing Social Security benefits." *Id.* at 806.

First, the *Tupper* panel did not consider the Washington Supreme Court's recent explanation that the power to afford a particular type of relief is *a component of* subject matter jurisdiction. Under the *Ronald Wastewater* reasoning, a court cannot have subject matter jurisdiction but lack the inherent power to enter an order granting a particular type of relief. 196 Wn.2d at 371-72.

Second, although the *Tupper* panel attempted to distinguish *Weiser*, we disagree that *Tupper* distinguished *Weiser* in any meaningful way. The *Tupper* panel asserted that no "controlling, adverse United States Supreme Court" precedent prohibited the order in *Weiser*, whereas a federal statute clearly prohibited dividing Social Security benefits when the trial court entered the order in *Tupper*. 15 Wn. App. 2d at 809 n.7. But when the trial court entered the property settlement decree in *Weiser*, Washington law unambiguously prohibited indemnifying former spouses for disposable military retirement replaced by military disability benefits. *Kraft*, 119 Wn.2d at 451; *Perkins*, 107 Wn. App. at 327. We disagree with *Tupper*'s attempt to find a distinction on this basis.

Likewise, this case cannot be distinguished from either *Tupper* or *Weiser* on this basis because the trial court entered the order dividing Geoffrey's military disability retirement after *Mansell*, *Kraft*, and *Perkins*. Yet *Tupper* and *Weiser* came to opposite conclusions, with *Tupper* concluding that the trial court lacked inherent authority to enter the dissolution decree in that case based on legal error making it void ab initio, and *Weiser* concluding that legal error alone did not defeat the trial court's inherent authority to enter the dissolution decree and applying res judicata.

We decline to follow *Tupper* in this case, following *Weiser* instead.[6] Even a prior unappealed order that was incorrect at the time it was made may be subject to res judicata so long as the court had personal and subject matter jurisdiction. *Weiser*, 14 Wn. App. 2d at 905-06; *see Dike*, 75 Wn.2d at 8. Accordingly, whether or not an order complied with the law at its inception does not determine whether it is subject to res judicata. Indeed, that is the whole point of the doctrine of res judicata—to establish finality despite later allegations that the prior order was erroneous. 14A DOUGLAS J. ENDE, WASHINGTON PRACTICE: CIVIL PROCEDURE § 35:21 (3d ed. 2020).

"The dispositive inquiry to determine subject matter jurisdiction is whether the court had overall authority to adjudicate the particular claim, and the authority to issue a particular form of relief follows." *Ronald Wastewater*, 196 Wn.2d at 372. Yet, the *Tupper* panel concluded that a superior court lacks the inherent authority to enter an order where the trial court has made a legal error and entered an order that is preempted by federal law. The *Tupper* panel confused legal error with the superior court's inherent power to afford particular relief, a component of subject matter jurisdiction.

---

[6] *In re Pers. Restraint of Arnold*, 190 Wn.2d 136, 150, 410 P.3d 1133 (2018) ("[W]hen there are conflicts in the Court of Appeals," the Washington Supreme Court "resolve[s] them by granting review, not by telling the later panel to adhere to a decision of an earlier panel.").

So long as a superior court had the authority to adjudicate the type of controversy involved in its order, an incorrect decision regarding preemption is a legal error that does not implicate the court's subject matter jurisdiction. *See id.* at 371-72. For example, an order in a marriage dissolution that incorrectly applies federal law is different from a state court's invasion of the National Labor Relations Board's exclusive jurisdiction over labor disputes. *See Fowlkes*, 58 Wn. App. at 763. Nor is an error in a decision regarding federal preemption equivalent to exceeding a specific legislative grant of jurisdiction, the issue in *Ronald Wastewater*, 196 Wn.2d at 373. The courts in *Fowlkes* and *Ronald Wastewater* lacked the authority to resolve the issue in question. But in *Weiser*, *Tupper*, and here, the trial courts had the authority under the state constitution and state statute to divide property in marriage dissolutions, order spousal maintenance, and resolve questions of federal preemption, even if they made legal errors. The proper remedy in all of these cases was a timely appeal of the dissolution decree where the legal error was made.

By holding that defects in preemption analysis render a court's decision void ab initio, as if the court lacked subject matter jurisdiction, *Tupper* permits litigants who did not avail themselves of a timely appeal to revisit the validity of final orders years, or even decades, later. *See Shoop v. Kittitas County*, 108 Wn. App. 388, 397-98, 30 P.3d 529 (2001). And because nothing in *Tupper* restricted its reasoning to marriage dissolution cases, a litigant can now rely on *Tupper* to revisit a final order in *any* case involving any alleged error regarding federal preemption of state law. Further, there is no reason *Tupper*'s analysis would not just as easily apply to issues of state preemption of local law.

Under *Tupper*'s reasoning, federal and state preemption decisions would *always* be vulnerable to a later argument that the resulting order is void—not just voidable—because the deciding court got the preemption analysis wrong. If permitted to stand, *Tupper* threatens the

finality of all preemption decisions, an area of law that touches significant issues, including the regulation of firearms and controlled substances, state regulation of activities on tribal land, and state unemployment insurance tax assessments, to name a few recent examples. *See, e.g.*, *City of Edmonds v. Bass*, ___ Wn. App. 2d ___, 481 P.3d 596, 598, 601-604 (2021) (whether state law preempts local firearm storage regulations); *Emerald Enter., LLC v. Clark County*, 2 Wn. App. 2d 794, 798-99, 413 P.3d 92 (2018) (whether state marijuana decriminalization preempts local zoning ordinances banning retail marijuana sales); *In re Pers. Restraint of Brettell*, 6 Wn. App. 2d 161, 171, 430 P.3d 677 (2018) (discussing preemptive effect of federal controlled substances act on state law); *Everi Payments, Inc. v. Dep't of Revenue*, 6 Wn. App. 2d 580, 590-605, 432 P.3d 411 (2018) (whether federal law preempts state's authority to tax nontribal members doing business on tribal land); *Swanson Hay Co. v. Emp't Sec. Dep't*, 1 Wn. App. 2d 174, 188-203, 404 P.3d 517 (2017) (whether the Federal Aviation Administration Authorization Act preempts state's authority to assess unemployment insurance taxes on certain kinds of payments); *Kitsap County v. Kitsap Rifle & Revolver Club*, 1 Wn. App. 2d 393, 399, 403-412, 405 P.3d 1026 (2017) (whether state law preempts local firearms regulation); and *State v. Fisher*, 132 Wn. App. 26, 30-31, 130 P.3d 382 (2006) (whether the Uniform Controlled Substances Act preempts localities from setting penalties for violations of the act). *Tupper* undermines the finality of all manner of preemption cases.

We instead conclude, consistent with *Weiser*, that a trial court decision contrary to federal law may amount to an error of law that can be corrected on appeal or through a CR 60 motion, but that does not undermine the trial court's subject matter jurisdiction. Here, we hold that the trial court had authority to enter the dissolution decree, including the division of Geoffrey's military disability retirement and, thus, the unappealed, final decree has res judicata effect.

C.     Whether Other Grounds for Reopening the Judgment Exist

If res judicata applies, the final judgment may be reopened "'only when specifically authorized by statute or court rule.'" *Weiser*, 14 Wn. App. 2d at 903 (quoting *Shoemaker*, 128 Wn.2d at 120). Under some circumstances, CR 60 provides a basis for relief from a final unappealed judgment. Geoffrey acknowledges that he never filed a CR 60 motion. And under RCW 26.09.170(1), spousal maintenance decrees can be modified "only upon a showing of a substantial change of circumstances," which Geoffrey has not alleged or shown.

Geoffrey asks this court to invalidate the dissolution decree because he claims the spousal maintenance provision of the property settlement agreement offends public policy by violating the prohibition against dividing military disability retirement. This argument fails because it ignores that modification is available only upon a showing of a substantial change in circumstances, and he relies on contract law principles that are not applicable here, where the property settlement agreement was fully incorporated into the final, unappealed dissolution decree. RCW 26.09.170(1). Therefore, we do not revisit the merits of the dissolution decree because res judicata applies, and so we also do not revisit the terms of the underlying agreement.

Geoffrey suggests that the trial court made a reversible error by analogizing to the Alaska Supreme Court case of *Gross v. Wilson*, 424 P.3d 390 (2018), which he points out is not binding on Washington courts. While it is true that *Gross* was not binding on Washington courts, the trial court did not treat it as binding and we review the trial court's enforcement order de novo. *See Weiser*, 14 Wn. App. 2d at 903. The extent to which the trial court analogized to *Gross* is irrelevant to our review.

20

D.      Trial Court's Award of Attorney Fees to Heidi

Geoffrey argues that the trial court erred by awarding attorney fees to Heidi because the property settlement agreement provided that "[e]ach party shall pay their own costs and [attorney] fees." Reply Br. of Appellant at 25. Geoffrey does not contest the trial court's calculation of the amount of the award.

"We review statutory attorney fee award decisions for an abuse of discretion." *In re Marriage of Coy*, 160 Wn. App. 797, 807, 248 P.3d 1101 (2011). We defer to the trial court unless its decision was untenable or manifestly unreasonable. *See id.* Under RCW 26.18.160, the prevailing party in an action to enforce a maintenance order is entitled to recover costs and reasonable attorney fees from the opposing party.

Here, the trial court reasonably interpreted the provision in the property settlement agreement stating that each party would bear their own costs and attorney fees to refer to the costs and fees incurred in negotiation of *that* agreement, not eliminating either party's right to recover costs and fees in future enforcement actions under RCW 26.18.160. Heidi was the prevailing party in the enforcement action. The trial court did not abuse its discretion by awarding Heidi attorney fees under RCW 26.18.160.

E.      Heidi's Request for Attorney Fees on Appeal

Heidi requests attorney fees on appeal under RCW 26.18.160. Under RAP 18.1(a), this court may grant attorney fees on appeal "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review." Under RCW 26.18.160, the prevailing party may recover attorney fees and costs without showing financial need. *Fairchild v. Davis*, 148 Wn. App. 828, 834, 207 P.3d 449 (2009). Because we affirm the trial court's enforcement order in Heidi's favor, we grant her request for attorney fees on appeal under RAP 18.1(a) and RCW 26.18.160.

CONCLUSION

We affirm the trial court's 2019 enforcement order and award attorney fees to Heidi on appeal.

Glasgow, J.

I concur:

Lee, C.J.

SUTTON, J. (concurrence in part and dissent in part)—I concur in result only, and I dissent in part regarding the discussion of *In re Marriage of Tupper*, 15 Wn. App. 2d 796, 478 P.3d 1132 (2020), as that case involved different benefits, the division of Social Security benefits not authorized by law at the time of the dissolution order.

Sutton, J.